JONES v MORGAN

1. APPEAL AND ERROR—DAMAGES—SECURED TRANSACTIONS—COMMER-
   CIAL REASONABLENESS—REPOSSESSION—MATTER OF LAW—
   WEIGHT OF EVIDENCE.

   The issue of commercial reasonableness in the handling of repos-
   sessed goods is one for the trier of fact when there are con-
   tested issues of fact, and a jury verdict will not be reversed
   unless its determination is against the great weight of the
   evidence.

2. DAMAGES—COUNTERCLAIMS—AFFIRMATIVE AWARDS—SET-OFF.

   Damages which are awarded under a counterclaim by a defend-
   ant against a plaintiff do not have to be affirmatively awarded
   to the defendant, but may be set off against the amounts
   awarded to the plaintiff.

3. SECURED TRANSACTIONS—DEFAULT—RETENTION OF COLLATERAL—
   DAMAGES—UNIFORM COMMERCIAL CODE—SALE OF COLLATERAL—
   DELAY—INJURY.

   The Uniform Commercial Code provisions which allow retention
   of collateral by a secured creditor when a debtor is in default
   should not be interpreted to deprive the secured party of the
   right to sue on a note where he has retained collateral for an
   unreasonable period or to mean that the creditor must sell the
   collateral before bringing suit on the note; but, to the extent
   that the creditor's inaction results in injury to the debtor, the
   debtor has a right of recovery (UCC 9-505[2], 9-507[1]).

4. EVIDENCE—MATERIALITY—RELEVANCY—JUDGES—DISCRETION—
   ABUSE OF DISCRETION—GOODS—BOOK VALUE—ACTUAL CONDI-
   TION.

   Decisions with respect to materiality and relevancy of evidence

REFERENCES FOR POINTS IN HEADNOTES

[1] 69 Am Jur 2d, Secured Transactions §§ 581–601.
[2] 20 Am Jur 2d, Counterclaim, Recoupment and Setoff § 158.
    22 Am Jur 2d, Damages § 187.
[3] 69 Am Jur 2d, Secured Transactions §§ 551, 552.
[4] 29 Am Jur 2d, Evidence §§ 249, 251–257.
[5] 61 Am Jur 2d, Pleading §§ 308, 309.
[6] 75 Am Jur 2d, Trial § 924 *et seq.*

are within the sound discretion of the trial court; and it is not an abuse of that discretion for the court to require trade journal evidence of book-value of goods to be qualified by consideration of the actual condition of those goods.

5. PLEADING—AMENDMENT OF PLEADINGS—AD DAMNUM CLAUSES—
   PREJUDICE—DEFENSE UPON MERITS.
   The amendment of pleadings is a matter within the sound discretion of the trial judge, and the policy is to allow liberal amendment of pleadings; therefore, liberal amendments of *ad damnum* clauses will be sustained where no prejudice results to the opposing party in maintaining his action or defense upon the merits.

6. JURY—INSTRUCTIONS TO JURY—ENTIRETY.
   A charge to the jury must be considered in its entirety.

Appeal from Cheboygan, Edward H. Fenlon, J. Submitted Division 3 January 14, 1975, at Grand Rapids. (Docket No. 18636.) Decided February 11, 1975. Leave to appeal denied, 394 Mich 775.

Complaint in District Court by Roderick Jones, doing business as Jones City Garage, against Willard E. Morgan for balance due on a promissory note. Judgment for plaintiff. Defendant appealed to Circuit Court. Affirmed. Defendant appeals by leave granted. Affirmed.

*Patrick & Johnson, P. C.,* for plaintiff.

*Jerry L. Sumpter,* for defendant.

Before: ALLEN, P. J., and N. J. KAUFMAN and O'HARA,* JJ.

N. J. KAUFMAN, J. This appeal arises from a jury verdict for plaintiff in Cheboygan's 89th District Court. Plaintiff sued defendant on a promissory note with a balance of $1,900 and defendant

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

counterclaimed for damages because of the manner in which plaintiff dealt with the repossessed collateral. The jury returned a verdict for plaintiff in the amount of $1,300.

Plaintiff Jones was a garage owner in Cheboygan who sold new and used vehicles. In April, 1969, plaintiff sold a used 1968 Pontiac LeMans to Willard Morgan, Jr., a minor and the son of defendant, Willard Morgan, Sr., who co-signed the note. The price of the car, less down payment, was $2,100, financed for 24 months. Plaintiff sold the note to a local bank, and defendant's son made one payment before defaulting. After default the bank repossessed the car, and notified defendant it would be sold at public sale on December 19, 1969. Since there were no purchasers for the car and since the note was with recourse, the bank charged plaintiff's account $605.28 and required plaintiff to pay the balance of the note of $1,334.20. The bank also returned the car to plaintiff's lot where it remained without sale for some 20 months before the trial in District Court. In 1971, plaintiff brought suit on the note. Defendant makes five claims of error which we will discuss *seriatim*.

I. *As a matter of law, did plaintiff act in a commercially unreasonable manner so as to deprive him of the right to recover on the note?*

Two of the issues raised by defendant require a determination of whether plaintiff dealt with the collateral, the 1968 Pontiac LeMans, in a commercially reasonable manner. UCC 9-504(3); MCLA 440.9504(3); MSA 19.9504(3) reads in part as follows:

"Disposition of the collateral may be by public or private proceedings and may be made by way of one or

more contracts. Sale or other disposition may be as a
unit or in parcels and at any time and place and on any
terms but every aspect of the disposition including the
method, manner, time, place and terms must be com-
mercially reasonable."

When there are contested issues of fact, the
issue of commercial reasonableness is one for the
trier of fact. *Ennis v Atlas Finance Co,* 120 Ga
App 849; 172 SE2d 482 (1969); *First National-Bank
of Bellevue v Rose,* 188 Neb 362; 196 NW2d 507
(1972). The jury in this case was instructed by the
trial judge that if they found plaintiff to have
acted commercially unreasonably by failing to dis-
pose of the collateral for almost 20 months, they
must find for defendant.[1] The jury's verdict of
$1,300 for the plaintiff in the face of the instruc-
tion indicates they did not find plaintiff to have
acted commercially unreasonably, or not so unrea-
sonably as to have deprived plaintiff of any recov-
ery.

To reverse the finding of the jury we must find
that their verdict was against the great weight of
the evidence. *Williams v State Highway Dept,* 44
Mich App 51; 205 NW2d 200 (1972). At trial, the
jury heard testimony concerning the condition and
value of the car at the time of repossession. Plain-
tiff tried to prove the auto was unsaleable, and
defendant attempted to show the car's value
equalled the amount outstanding on the note at

---

[1] Neither party complains of this instruction, but we wish to note
that the jury need not be put to such a choice. A creditor is not
precluded from all recovery by acting commercially unreasonably.
Rather, the jury may determine the amount of damage resulting from
such unreasonableness, and set off that amount against any sums due
the creditor on the note. *Wilson Leasing Co v Seaway Pharmacal
Corp,* 53 Mich App 359, 371; 220 NW2d 83, 89 (1974); UCC 9-507(1);
MCLA 440.9507(1); MSA 19.9507(1). We may surmise that the jury, by
returning a verdict for $1,300 on a $1,900 note, may have applied this
set-off through a process of common sense.

the time of repossession. Plaintiff testified that the auto was in very poor condition when delivered to him and he was unable to sell it at auction or private sale. Defendant acknowledged one accident resulting in damage to the front of the car, another collision with a utility pole causing damage to the side, and an oil leak caused by a rock hitting the rear end of the vehicle. However, defendant denied plaintiff's claim that the car was "caved in" at the top, sides and rear end and that it was inoperable. Plaintiff's counsel requested and the trial court granted a motion to allow the jury to view the automobile as it sat on plaintiff's lot.

The jury also heard testimony that an insurance company paid $311 to have the front-end damage repaired and that the money was not used to repair the vehicle. It is unclear from the transcript whether the bank or plaintiff received this money, but plaintiff did testify it would have cost considerably more than $311 to repair the vehicle.

Plaintiff testified that he wrote defendant two or three letters to ask him to come in and talk about the matter, or plaintiff would take further action. Defendant admits receiving the notice of public sale but denies receiving any other letters from plaintiff, although defendant's wife acknowledged receipt of one letter from plaintiff. Defendant testified he made no attempt to regain possession because he did not need the car, and his son no longer had any use for it.

While retention of depreciable collateral without sale for two years compels close scrutiny of the plaintiff's actions, viewing the transaction as a whole, we cannot find that it is unreasonable as a matter of law, nor that the jury's finding for plaintiff was against the great weight of the evidence.

As the sole arbiter of the credibility of witnesses, *Hughes v John Hancock Mutual Life Ins Co,* 351 Mich 302; 88 NW2d 557 (1958), the jury apparently believed plaintiff's testimony that the vehicle was in so poor a condition on repossession that plaintiff could not resell it. Under these circumstances we will not substitute our judgment for that of the jury.

The jury's finding that plaintiff acted reasonably also determines defendant's argument that he was entitled to recovery on his counterclaim under UCC 9-507; MCLA 440.9507; MSA 19.9507. This statute provides the remedy available to a debtor, the right to recover damages when a secured party acts unreasonably in disposing of collateral.

It is not necessary that such damages be affirmatively awarded to the debtor, but they may instead be set off against the amounts owed by the debtor to the creditor. *Wilson Leasing Co v Seaway Pharmacal Corp,* 53 Mich App 359, 371; 220 NW2d 83, 89 (1974). As we have noted, the jury's determination as to the existence and extent of commercial unreasonableness, not being against the great weight of the evidence, is binding.

II. *As a matter of law did the retention of collateral by plaintiff constitute satisfaction of the debtor's obligation?*

UCC 9-505(2); MCLA 440.9505(2); MSA 19.9505(2) provides that upon written notification a secured party may retain collateral in satisfaction of a debt. In the instant case, no written notification was made, and plaintiff denies he ever intended to retain the collateral as satisfaction of the debt. We could dispose of this argument by simply pointing to the fact that the jury rejected

this contention as a matter of fact. The jury was charged:

"If you find that the plaintiff, in retaining the collateral for two years, has accepted such collateral in satisfaction of the debtor's obligation, then you must find in favor of the defendant."

By finding for plaintiff in the amount of $1,300, the jury clearly rejected the argument of retention of collateral in satisfaction of the debt. We find no basis on which to reverse that finding.

However, since the proceedings here evidence a misunderstanding of UCC 9-505(2) by defense counsel, and since this section is virtually uninterpreted by our case law, we address ourselves to defendant's legal argument.

Defendant interprets § 9-505(2) to deprive a secured party of the right to sue on a note where he has retained collateral for an unreasonable period. While there is some authority for defendant's interpretation, White & Summers, Uniform Commercial Code, p 980, fn 89, § 26-8, *Moran v Holman,* 13 UCC Rep Serv 206 (Alas, 1973), we think the better interpretation of § 9-505(2) is that it is a provision drafted for the benefit of the secured party by allowing him the option to retain collateral in satisfaction of the debt in certain specified situations and where he manifests that intent. A debtor who has been damaged by improper retention of collateral finds his remedy in UCC 9-507(1) which allows him to recover from the secured party "any loss caused by a failure to comply with any of the provisions of Part 5 of the Uniform Commercial Code". If the loss experienced by the debtor equals the amount due on the note, then, of course, the secured party will be entitled to no recovery. The debtor is sufficiently protected by

§ 9-507(1), without employing a strained reading of § 9-505(2) to imply retention in satisfaction where no such result was intended by the secured party. This result is in keeping with this Court's decision in *Michigan National Bank v Marston,* 29 Mich App 99; 185 NW2d 47 (1970), which specifically rejects the contention that a creditor must sell the collateral before bringing suit on the note, the Court recognizing that:

"To the extent the creditor's inaction results in injury to the debtor, the debtor has a right of recovery." 29 Mich App at 108.

Such recovery is set off against any amounts due the creditor on the note, *cf. Farmers State Bank of Parkston v Otten,* — SD —, 204 NW2d 178 (1973); *Home Finance Co v Ratliff,* 374 SW2d 494 (Ky, 1964).

III. Did the trial court commit reversible error by failing to allow testimony of the "blue book" value of the collateral?

At trial defendant called an area auto dealer as an expert in car valuation and he attempted to testify as to the value of a 1968 LeMans Sport Coupe as of the date of repossession and at the date of trial. Plaintiff objected that the values would not reflect the damaged state of the car and the trial court agreed and rejected the introduction of this testimony unless a proper foundation as to the actual condition of this particular automobile was first laid.

Decisions with respect to materiality and relevancy of evidence are within the sound discretion of the trial court and are reversible only upon a showing of an abuse of discretion. *People v Harrell,* 54 Mich App 554; 221 NW2d 411 (1974).

Defendant points to UCC 2-724; MCLA 440.2724; MSA 19.2724 as authority that trade journal evidence of value must be allowed by the trial judge but that section clearly applies only to goods regularly bought and sold in an established commodity market, and we question whether used automobiles are bought and sold in a commodity market. In view of the damaged condition of the automobile in this case, it was not an abuse of discretion for the court to require evidence of book-value to be qualified by a consideration of the actual condition of this particular vehicle. 3 Wigmore on Evidence § 717(2), p 58, defines value in this manner:

"Value is, of course, the rate at which an exchange would in fact be made at this moment by the purchasing and selling community; hence a knowledge of what an article *ought* to exchange for is not a knowledge of value—at least in the sense in which courts regard it. Nor is a knowledge of the various qualities and *uses* of an article sufficient, if it stops short of including the exchangeable rate which these qualities actually give it.

"In short, where there is a market value, the knowledge of the witness must be of this market value."

Professor Wigmore goes on to say at § 719(2), p 61, that personal observation of the thing to be valued is the general requirement, but that a hypothetical basis is legitimately and frequently used, § 720, p 68. The trial court warned defense counsel to lay a proper foundation, to form a complete hypothetical as to this particular vehicle, and counsel having failed to do so, the court rejected the testimony. We find no abuse of discretion in this ruling.

IV. *Did the trial court err in allowing the AD DAMNUM clause to be amended at trial?*

At trial plaintiff moved, over defendant's objec-

tion, to increase the *ad damnum* from $1,300 to $1,900. Plaintiff's counsel explained that he had demanded the former amount without considering the additional $600 the bank had taken from plaintiff's account. There is no dispute that $1,900 is the amount actually owed on the note, and defendant's only objection is that he was surprised and prejudiced by this amendment. Defendant cites *Phillips v Rolston,* 376 Mich 264; 137 NW2d 158 (1965), in support of his argument. Defendant failed to note this Court's decision in *Gibeault v City of Highland Park,* 49 Mich App 736; 212 NW2d 818 (1973), affirmed, 391 Mich 814; 217 NW2d 99 (1974), where a post trial amendment of the *ad damnum* clause was allowed, and which criticized the rationale of *Phillips.* The Supreme Court's affirmance indicates that liberal amendments to *ad damnum* clauses will be sustained.

Defendant also cites DCR 118 as placing the burden on a moving party to prove no prejudice will result to the opposing party by amendments to conform with proofs. We need only note that the prejudice which must be disproved is that which the opposing party may experience "in maintaining his action or defense upon the merits". The amount of damages in this case does not go either to the ability to maintain the action or to the merits of the case.

Amendment of pleadings is a matter within the sound discretion of the trial judge, and the policy is to allow liberal amendment of pleadings. *Ben P Fyke and Sons Inc v Gunter Co,* 390 Mich 649; 213 NW2d 134 (1973); *Bigelow v Walraven,* 392 Mich 566; 221 NW2d 328 (1974). To reverse the trial court would require evidence of a clear abuse of discretion and none is found here.

V. *Did the trial court commit reversible error by incorrectly emphasizing plaintiff's position when summarizing the facts at the conclusion of trial?*

DCR 516.7 states in part as follows:

"At the close of the evidence each party shall submit to the court a statement of the issues and his theory of the case as to each issue." From the record it appears defendant did not submit such a statement. The judge charged as to the theories of both sides and defendant objected then and now complains that the brevity of the statement of defendant's case was prejudicial to defendant. Once the charge was given, it would have been highly prejudicial to plaintiff to recall the jury to further instruct on defendant's theory of the case, and we find no reversible error in the trial court's refusal to further instruct. A charge must be considered in its entirety, *Shreve v Leavitt,* 51 Mich App 235; 214 NW2d 739 (1974), and if the theories of the parties and the applicable law are adequately and fairly presented to the jury, no reversible error is committed. *Baker v Saginaw City Lines, Inc,* 366 Mich 180; 113 NW2d 912 (1962). Number of words or sentences is not the determining factor and viewed in its entirety the trial court's charge was not so prejudicial as to warrant reversal.

Affirmed. Costs to plaintiff.