[No. 48218–7.   En Banc.   March 24, 1983.]

SERVICE CHEVROLET, INC., *Appellant,* v. KELLEY
R. SPARKS, ET AL, *Respondents.*

*Campbell, Dille, Barnett, McCarthy & Adams* and *Bryce H. Dille,* for appellant.

*Tuell, Anderson & Fisher,* by *Stephen W. Fisher,* for respondents.

DORE, J.—Service Chevrolet, Inc., appeals from a trial court summary judgment for Kelley and Evan Sparks. On appeal, Service Chevrolet, Inc., raised the issue of whether or not a secured party can retake possession of a consumer goods security after default by the debtor, and then subsequently bring suit on the conditional sales contract against the debtor for the balance due on the purchase price.

On November 22, 1978, the respondents Sparks purchased a 1977 Chevrolet Camaro from appellant Service Chevrolet, Inc., which was subsequently assigned by Service Chevrolet to Puget Sound National Bank (hereinafter PSNB) for collection. In the spring of 1980, the Sparks were delinquent in making payments. Representatives of PSNB informed the Sparks that, unless payments were made as called for in the contract, they would repossess the car. When the Sparks failed to make such payments, PSNB retook possession of the vehicle and delivered it directly to the seller, Service Chevrolet. The bank subsequently[1] reassigned the conditional sales contract and security agreement to Service Chevrolet.

It is undisputed that within 2 to 4 weeks after the bank retook possession of the car, the attorney for Service Chevrolet wrote the Sparks that Service Chevrolet did not intend to sell the vehicle, and that the Sparks could retake possession of the vehicle at any time. The letter, dated July 14, 1980, also informed the Sparks that Service Chevrolet intended to sue them for the outstanding balance on the

---

[1] The record does not indicate how much time elapsed between the repossession and the transfer of security instruments back to the seller.

contract, in the amount of $3,218.44. This sum included a payment and interest accrued while the car was in the possession of the seller after retaking possession.

The Sparks refused to pay or take possession of the car. As a result, Service Chevrolet instituted the present action requesting judgment for the full current balance of the purchase price. Service Chevrolet retained physical possession of the automobile. On February 13, 1981, the trial court entered an order granting the Sparks' motion for summary judgment against Service Chevrolet, finding that Service Chevrolet irrevocably elected its remedy under section .9–501(1) of the Washington Uniform Commercial Code by repossessing the vehicle subject to a security agreement.[2] The court concluded that Service Chevrolet was barred from suing the Sparks for the outstanding pur-

---

[2]The chattel paper, characterized as a "conditional sale contract and security agreement" by the preparer Puget Sound National Bank, defined the term "default" in provision 8, then stated:

Then and in any of such events of default, the entire amount of the unpaid purchase price and other charges and indebtedness secured hereby shall then or at any time thereafter, at the option of Seller, become immediately due and payable without notice or demand, and seller shall have an immediate right to pursue the remedies herein provided.

Provision 9 sets forth the secured party's remedies upon default:

9. REMEDIES. In the event of a default hereunder, Seller shall have all remedies provided by law; and without limiting the generality of the foregoing, shall be entitled as follows:

(a) Buyer agrees to put Seller in possession of the property on demand; and at the request of the Seller to deliver the property to Seller at a place designated by Seller which is reasonably convenient to both parties; and

(b) Seller is authorized to enter any premises where the property is situated or may be found and take possession of the property, together with all additions, equipment and accessories thereto, without notice or demand and without legal proceedings. Buyer waives all claims for damages due to, or arising from, or connected with any such taking; and

(c) Buyer agrees that a period of ten (10) days from the time notice is sent by first class mail or otherwise, shall be a reasonable period of notification of a sale or other disposition of the property; and

(d) Buyer agrees that any notice or other communication by Seller to Buyer shall be sent to the mailing address of the Buyer stated herein; and

(e) Buyer agrees to pay on demand the amount of all expenses reasonably incurred by Seller in efforts to collect the indebtedness secured hereby and in protecting or realizing on the property.

chase price in accordance with the Washington election of remedies rule which has been retained in Washington with respect to purchase money security interests in consumer goods.

Article 9 of the Washington Uniform Commercial Code sets forth the rights of the debtor and creditor upon default in a secured transaction. RCW 62A.9–501(1) states:

> (1) When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this Part and . . . those provided in the security agreement. He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. . . . The rights and remedies referred to in this subsection are cumulative.

The rights referred to include the secured party's right to sue on the contract and reduce his claim to judgment, the right to take possession of the collateral after default (RCW 62A.9–503), the right to dispose of collateral after default (RCW 62A.9–504), and the right to retain collateral in satisfaction of the obligation (RCW 62A.9–505(2)).

The Washington Legislature adopted a variation of the official Uniform Commercial Code text, set forth in the second paragraph of RCW 62A.9–501(1):

> Notwithstanding any other provision of this Code, in the case of a purchase money security interest in consumer goods taken or retained by the seller of such collateral to secure all or part of its price, *the debtor shall not be liable for any deficiency after the secured party has disposed of such collateral under RCW 62A.9–504 or has retained such collateral in satisfaction of the debt under subsection (2) of RCW 62A.9–505.*

(Italics ours.) Only Washington State has adopted this version of the Code relating to purchase money consumer goods.

Former RCW 62A.9–505(2) provides:

> In any other case involving consumer goods or any other collateral a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor and except in the case of consumer

goods to any other secured party who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or is known by the secured party in possession to have a security interest in it. If the debtor or other person entitled to receive notification objects in writing within thirty days from the receipt of the notification or if any other secured party objects in writing within thirty days after the secured party obtains possession the secured party must dispose of the collateral under RCW 62A.9-504. In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor's obligation.

Service Chevrolet argues that because no notification of intent to retain was sent, a retention under RCW 62A.9-505(2) could not have occurred. Some courts have considered a specific proposal of retention a prerequisite to precluding the creditor from pursuing the debtor. *Priggen Steel Bldgs. Co. v. Parsons,* 350 Mass. 62, 213 N.E.2d 252 (1966); *Stensel v. Stensel,* 63 Ill. App. 3d 639, 380 N.E.2d 526 (1978). Other courts, however, have not. *Moran v. Holman,* 514 P.2d 817 (Alaska 1973); *Northern Fin. Corp. v. Chatwood Coffee Shop, Inc.,* 4 U.C.C. Rep. Serv. 674 (N.Y. Sup. Ct. 1967); *Farmers State Bank v. Otten,* 87 S.D. 161, 204 N.W.2d 178 (1973).

We are persuaded by the reasoning that a secured party who retains the chattel for an *excessive* period of time without disposing of it should not be permitted to profit by his failure to furnish the requisite notice. As stated in 4 R. Anderson, *Uniform Commercial Code* § 9-505:5 (2d ed. 1971), at page 632:

The creditor's failure to give notice of intention to retain the collateral in discharge of the debt does not prevent the debtor from showing that the collateral was in fact retained by the creditor and on the basis of such fact he may claim that he is discharged from further liability. The giving of notice protects the creditor from a subsequent claim that he should have sold the collateral.

(Footnote omitted.)

Courts in other states, all without the special protection

of paragraph 2 of RCW 62A.9–501(1),[3] have reasoned that even in the absence of a written proposal to retain, the secured party may be deemed to have elected to retain the collateral in satisfaction of the obligation where he conducts himself in a manner so unfair or so unreasonable as to amount to retention. *Northern Fin. Corp. v. Chatwood Coffee Shop, Inc., supra; Brownstein v. Fiberonics Indus., Inc.,* 110 N.J. Super. 43, 264 A.2d 262 (1970); *Bradford v. Lindsey Chevrolet Co.,* 117 Ga. App. 781, 161 S.E.2d 904 (1968); *National Equip. Rental, Ltd. v. Priority Elecs. Corp.,* 435 F. Supp. 236 (E.D.N.Y. 1977); *Haufler v. Ardinger,* 28 U.C.C. Rep. Serv. 893 (Mass. Dist. Ct. 1979).

In specific cases, other courts have not reached a consensus on the amount of time which may elapse before retaking possession becomes retention under RCW 62A.9–505(2). The Uniform Commercial Code, however, requires a standard of good faith and reasonableness in every commercial transaction. There must, therefore, be a *"reasonable"* limit to the length of time a secured party is permitted to hold collateral before it is deemed to have exercised its right to retain that collateral in satisfaction of the obligation.

The question of what length of time is "reasonable" is a question of fact for the trier of fact. *Shultz v. Delaware Trust Co.,* 360 A.2d 576, 578 (Del. Super. Ct. 1976) (citing *Jones v. Morgan,* 58 Mich. App. 455, 228 N.W.2d 419 (1975)); *National Equip. Rental, Ltd. v. Priority Elecs. Corp., supra.* This is generally true of any question of "rea-

---

[3]Washington State's special adoption of the version of the Uniform Commercial Code relating to purchase money consumer goods gives special protection to the purchaser of consumer goods. The legislative history of the Washington amendment to RCW 62A.9–501(1) reveals the intent of the Legislature to retain the law as it existed at the time of the adoption of the Uniform Commercial Code, not allowing deficiencies in the case of conditional sales contract financing, but allowing them in the case of chattel mortgage financing. House Journal, 38th Legislature (1963), at 682–83; Senate Journal, 39th Legislature (1965), at 305–06. Consequently, where the secured party chooses to repossess consumer goods and takes them in lieu of the obligation, he cannot collect a deficiency from the debtor. 8 W. Shattuck & R. Cosway, Wash. Prac., 9:1270, Comment 5, at 210 (1967).

sonableness" under Article 9 of the Uniform Commercial Code. *See, e.g., Mount Vernon Dodge, Inc. v. Seattle–First Nat'l Bank,* 18 Wn. App. 569, 587–88, 570 P.2d 702 (1977) (commercial reasonableness of secured party's disposition of collateral under RCW 62A.9–504 and RCW 62A.9–507). Such traditionally factual questions should be determined as a matter of law only in the "clearest of cases". *Browning v. Ward,* 70 Wn.2d 45, 48, 422 P.2d 12 (1966).

We cannot say, *as a matter of law,* that it was reasonable for plaintiff to delay action for 4 weeks. The record before us is extremely sparse. We have no idea of alternative theories and defenses argued in the court below, as no supporting or opposing memoranda or transcript were included in the record. The 4 weeks which all parties concede may have passed is sufficient to raise a factual issue of de facto or implied retention.

We reverse the decision of the trial court granting defendant's motion for summary judgment, but affirm its denial of plaintiff's cross motion. The cause is remanded for a factual determination of the reasonableness of plaintiff's delay.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., concur.