SCHMODE'S, INC., A NEBRASKA CORPORATION, APPELLEE, V.
RONALD R. WILKINSON AND MARY WILKINSON, A
COPARTNERSHIP, DOING BUSINESS AS M & R TRUCKING,
APPELLANTS.

361 N.W.2d 557

Filed February 8, 1985.   No. 83-762.

Thomas H. DeLay of Mueting, DeLay & Stoffer, for appellants.

Michael T. Brogan of Brogan & Stafford, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Defendants-appellants, Mary and Ronald Wilkinson, doing business as M & R Trucking, challenge the deficiency judgment entered against them, jointly and severally, under Neb. U.C.C. art. 9 (Reissue 1980), in favor of the plaintiff-appellee, Schmode's, Inc., a Nebraska corporation. Among the Wilkinsons' assignments of error is the failure of the trial court to find that Schmode's elected to retain the collateral in

satisfaction of the Wilkinsons' obligation. The record sustains that assignment, making it unnecessary that we address the remaining assignments. We reverse, remand, and direct that the cause be dismissed.

We note at the outset that this is an action at law. *First Nat. Bank & Trust Co. v. Hughes*, 214 Neb. 42, 332 N.W.2d 674 (1983); *Koperski v. Husker Dodge, Inc.*, 208 Neb. 29, 302 N.W.2d 655 (1981). The findings and disposition of the trial court therefore, the cause having been tried without a jury, have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Security State Bank v. McCoy, ante* p. 132, 361 N.W.2d 514 (1985); *South Sioux City Star v. Edwards*, 218 Neb. 487, 357 N.W.2d 178 (1984); *Koperski v. Husker Dodge, Inc., supra.*

Reviewed in accordance with that standard, the relevant facts are as follows.

Schmode's entered into a business transaction with Harco Leasing Company, Inc., whereby Schmode's sold to Harco a 1978 International tractor truck and a 1978 Hobbs trailer. Harco and the Wilkinsons then, on April 27, 1978, executed a conditional sales agreement, entitled "LEASING AGREEMENT," with respect to the truck, which obligated the Wilkinsons to pay Harco a principal amount, plus amortized interest and other charges, in 60 equal monthly installments and a larger 61st payment representing the truck's "residual value." On May 19, 1978, Harco and the Wilkinsons entered into a similar agreement with respect to the trailer, obligating the Wilkinsons to pay Harco a principal amount, plus amortized interest and other charges, in 60 equal monthly installments and a larger 61st payment representing the trailer's "residual value." Schmode's guaranteed Harco that if the Wilkinsons defaulted on their obligation such as to result in Harco's reclaiming the truck and trailer from the Wilkinsons, Schmode's would repurchase them from Harco.

The Wilkinsons defaulted, and on December 19, 1979, they delivered possession of the truck and trailer, collectively the collateral, to Schmode's.

The collateral was in need of repair and Schmode's restored it to sound mechanical condition, the restoration work being

completed by May 3, 1980. The collateral was then placed on Schmode's lot in an attempt to sell it. As the collateral did not sell, Schmode's used it by leasing it to others through about mid-April of 1983, during which time it was operated a minimum of 204,000 miles.

Schmode's honored its agreement with Harco and paid the sums due Harco from the Wilkinsons. The parties do not dispute that Schmode's had a security interest in the collateral.

The collateral was publicly sold on April 28, 1983, pursuant to the trial judge's order. At the trial on the merits the trial judge found that the April 28 sale had not been commercially reasonable "because of the lapse of nearly three years and the use of said vehicles before the sale." The trial judge accordingly ruled that the Wilkinsons were entitled to setoffs for the damages they suffered due to the commercially unreasonable sale.

The Wilkinsons argue that Schmode's elected to retain the collateral in satisfaction of the obligation by keeping and leasing it for a period of almost 3 years after restoration and causing it to be operated for at least 204,000 miles, and therefore cannot obtain a deficiency judgment.

Neb. U.C.C. § 9-505(2) (Reissue 1980) provides in relevant part:

> In any other case involving consumer goods or any other collateral a secured party in possession may, after default, propose *to retain the collateral in satisfaction of* the obligation. Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modifying his rights under this subsection.

Although we have not had occasion to deal with whether acts by a secured party other than the sending of notice may result in a § 9-505(2) election, other states with statutes virtually identical to ours have. There appear to be three different approaches.

One approach holds that an election under § 9-505(2) is impossible absent the service of notice on the debtor of the secured party's intent to retain the collateral in payment of the debt. *Flickinger v. Genesee Corp*, 71 A.D.2d 382, 423 N.Y.S.2d

73 (1979), typifies this view which seems to be premised on the notion that since the code provides a specific method for indicating that the secured party has elected to retain the collateral to satisfy the obligation, such an election cannot be implied from conduct not specified by the code. We reject this view on the ground that a secured party ought not be allowed to penalize a debtor by asserting the secured party's own failure to give the notice contemplated by § 9-505(2).

A second approach is that an election can be implied from an unreasonably prolonged retention of the collateral by the secured party and that the determination of what constitutes an unreasonable period of time is a question for the trier of fact. *Service Chevrolet v. Sparks*, 99 Wash. 2d 199, 660 P.2d 760 (1983); *Shultz v. Delaware Trust Company*, 360 A.2d 576 (Del. Super. 1976). This view appears to rest on the theory that to allow the secured party to retain the collateral for an unreasonably long time and then elect to sue the debtor on the underlying obligation would be unfair to the debtor.

The third approach requires that the secured party manifest an intent to accept the collateral in satisfaction of the obligation by some conduct other than an undue delay in disposing of the collateral. *Nelson v. Armstrong*, 99 Idaho 422, 582 P.2d 1100 (1978) (retaining farm equipment for $4^1/_2$ months did not constitute an election); *Jones v Morgan*, 58 Mich. App. 455, 228 N.W.2d 419 (1975) (keeping automobile for almost 2 years did not constitute an election); *Tanenbaum v. Economics Laboratory, Inc.*, 628 S.W.2d 769 (Tex. 1982) (taking back collateral at request of debtor that such be done in satisfaction of debt constituted election). This view rests, at least in part, on the notion that since the debtor is protected by other provisions in the code and because, at common law, the analogous concept of accord and satisfaction requires proof of the creditor's assent, in the absence of notice a clear manifestation of an election on the part of the creditor is required.

Under the circumstances of this case we need not choose at this time between the second and third approaches. Although we consider the question to be one of fact, we hold that in this case there is but one reasonable conclusion, and, therefore, as a matter of law, Schmode's, by using the collateral for a period of

nearly 3 years after restoration by leasing and causing it to be operated for at least 204,000 miles, elected to retain the collateral in satisfaction of the Wilkinsons' obligation. The trial court was clearly wrong in not so holding.

We leave to another day and another case the question of whether under some circumstances the mere retention of collateral for an unreasonably long time may in and of itself imply a § 9-505(2) election.

The judgment is reversed and the cause remanded with directions to dismiss.

REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.