George **GRAFF**, et al.,
Plaintiffs-Respondents,

v.

**NORTH PORT DEVELOPMENT CO.,**
et al., Defendants-Appellants.

Nos. 50874, 50877.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 5, 1987.

Motion for Rehearing and/or
Transfer Denied
July 30, 1987.

Daniel E. Wilke, Brinker, Doyen & Kovacs, Clayton, for plaintiffs-respondents.

Richard Boardman, St. Louis, for defendants-appellants.

SIMON, Judge.

Defendants, Lawrence J. and Jill Avis Goldstein, appeal from three separate rulings of the Circuit Court of St. Louis County. Defendants appeal an order granting a summary judgment against them and in favor of plaintiffs, George and Fred Graff and Louis Reichfelt and Clifford L. Goetz, trustees of the George Graff and Fred Graff revocable living trusts, on their action to recover on a promissory note signed by defendants Goldstein, defendant Thomas D. Maurer, Jr., and Valerie L. Maurer. Defendants also appeal an order denying their motion for directed verdict on Count I of their counterclaim for accounting and set-off. Finally, defendant Lawrence Goldstein appeals an order granting a summary judgment as to Count III of the counterclaim for specific performance of contract.

Defendant, Thomas D. Maurer, Jr., filed a notice of appeal in this court on November 18, 1985. However, he has not filed a brief. Therefore, his appeal is dismissed for failure to comply with Rule 84.05(a); Rule 84.08(b).

On appeal, defendants Goldstein maintain that the trial court erred: (1) in granting plaintiffs' motion in limine excluding evidence respecting plaintiffs' failure to pay fair market value for the real estate that served as collateral for the promissory note sued on; (2) in granting plaintiffs' motion for summary judgment on their claim on the promissory note; (3) in denying defendants' motion for directed verdict on their counterclaim for accounting and set-off (Count I); (4) in granting plaintiffs' motion for summary judgment on defendant Lawrence Goldstein's counterclaim for specific performance of contract (Count III).

This is the second appeal by defendants in this matter. Their first appeal was dismissed without prejudice as premature. *See Graff v. North Port Development Co.,* 691 S.W.2d 477 (Mo.App.1985).

On or about August 29, 1980, North Port Development Company (North Port), a Missouri corporation, purchased a tract of real estate known as the North Shore Golf Course from plaintiffs, George and Fred Graff. As a part of the consideration North Port executed two promissory notes payable to plaintiffs, secured by deeds of trust on the real estate purchased, in the amounts of $1,000,000 and $75,000. On December 1, 1980, an additional promissory note payable to plaintiffs was executed in the amount of $125,000. This note bore the signatures of Lawrence J. and Jill Avis Goldstein, and Thomas D. Maurer, Jr. and Valerie L. Maurer, as individuals, and Thomas D. Maurer, Jr., as president of North Port. This note was also secured by deed of trust on the real estate. On June 1, 1981, a security agreement listing various items of personalty (golf course equipment) was entered into by North Port and the Graffs. This was to serve as additional collateral on the notes. All of the aforementioned notes contained acceleration clauses.

On October 5, 1981, North Port entered into an option contract with L & M Acquisitions, Inc. (L & M), a Missouri corporation. For consideration, North Port granted L & M an option to purchase a substantial portion of the real estate that it had acquired from the Graffs. The option expired on January 4, 1982. By affidavit, George Graff admitted that he knew that North Port had granted an option to L & M.

On December 1, 1981, payments were due on all promissory notes held by the

Graffs. The payments were not made and the Graffs exercised their right to accelerate and demanded payment of the entire principal balance together with accrued interest. Foreclosure was also threatened. However, the time for payment was ultimately extended by the Graffs until January 10, 1982 in order to facilitate the exercise of the option by L & M. Apparently, all concerned expected a substantial return if the option was exercised. It appears that a conditional promissory note for $80,000 was given to the Graffs, to be considered as part of the purchase price paid by defendants if L & M exercised its option. L & M did not exercise its option because it was unable to obtain a landfill permit from the State of Missouri, and its planned project became economically unfeasible.

Defendants Goldstein allege that on December 29, 1981, the Graffs entered two additional agreements extending the time for principal and interest payments on the two notes for $1,000,000 and $75,000. Under the first agreement the Graffs allegedly withdrew notice of acceleration and agreed to defer payments of principal and interest through May 31, 1982, until the earliest of the following three dates: (a) the date of foreclosure on the deeds of trust; (b) the date of the sale of any part of the property acquired by North Port from the Graffs; or (c) August 1, 1985. All payments of principal and interest due on or after June 1, 1982, were again to be paid when due, and if they were not so paid, the Graffs retained the right to accelerate and foreclose. The second alleged agreement deferring the time for payments provided a method for distributing proceeds from the sale of the property between the Graffs and Lawrence Goldstein in the event it was sold. The Graffs maintain that they never executed either agreement, and although signatures purporting to be those of George and Fred Graff appear on the first alleged agreement, the Graffs contend that the signatures are not in fact theirs.

By letter dated April 29, 1982, the Graffs again gave notice of acceleration of the $1,000,000 and $75,000 notes, and made demand for immediate payment of the entire principal balance together with accrued interest. Defendants Goldstein maintain that this was in violation of the two aforementioned deferral agreements. Thereafter, notice of foreclosure on the trust deeds securing the notes was published from November 30, 1982 through December 29, 1982, for a period of twenty-one days. The trustee's sale was held on December 29, 1982. The Graffs were the successful bidders and the trustee's deeds conveyed the real estate to them.

The instant action began on April 20, 1982 to collect on the $125,000 promissory note. The petition named North Port, the Goldsteins (Lawrence and Jill), and the Maurers (Thomas, Jr. and Valerie) as defendants. North Port was subsequently dismissed as a party defendant and apparently Valerie Maurer was never served. The petition alleged that payment was due under the note and that demand had been made therefor. The petition further alleged that defendants had refused to make payment and prayed for judgment in the amount of $125,000, plus interest and attorney's fees.

Defendants Goldstein filed an amended joint answer, together with three counterclaims. In their answer, they admitted that they had duly executed the December 1, 1980 promissory note for $125,000. They denied, however, that the note was due and owing and that they had refused to pay the note. By Count I of their counterclaim, defendants Goldstein sought an equitable accounting of the value of personal property, in plaintiffs' possession, serving as collateral for the note under the security agreement. In Count II, Lawrence Goldstein sought damages for tortious interference of contract and in Count III Lawrence Goldstein sought specific performance of the alleged agreements to defer payments of principal and interest on the $1,000,000 and $75,000 notes and requested the trial court to set aside the trustee's deed conveying the "North Shore Golf Course" to the Graffs.

On July 9, 1984, during discovery, defendants Goldstein filed a request for the production of documents. The documents

requested included the alleged December 29, 1981 deferral agreements with respect to payments of principal and interest that formed the basis of Count III of defendants' counter claim. When there was no response to the request by plaintiffs, defendants Goldstein filed a motion to compel discovery on July 31, 1984. On August 20, 1984, plaintiffs filed an unverified response to the motion to compel stating that plaintiffs had appeared for deposition on July 10, 1984 and at that time "had all of the documents in their possession that were not privileged and were discoverable pursuant to the defendants' motion to produce documents." By having a set of said documents available for review at that time, plaintiffs contended that they had complied with the motion to produce. A hearing on defendants' Goldstein motion to compel was set for October 18, 1984.

On August 3, 1984, plaintiffs filed a motion for summary judgment as to Counts II and III of defendants' counterclaim. Before the motion was ruled on, Count II of the counterclaim was dismissed without prejudice by Goldstein. Plaintiffs' motion for summary judgment on Count III of defendant Lawrence Goldstein's counterclaim was sustained on August 29, 1984, prior to the hearing on Goldstein's motion to compel discovery.

Defendant Lawrence Goldstein's Count III alleged the following:

On or about December 28, 1981, Plaintiffs' Graffs and Defendant Lawrence J. Goldstein entered into a Contract providing for the deferral of principal and interest payment upon a Deed of Trust for the purchase of certain property commonly known as the "North Shore Golf Course."

On or about December 28, 1981, Plaintiffs' Graffs entered into a Contract with Defendant Lawrence J. Goldstein, in which Plaintiffs' Graffs further agreed to the deferral of payment on certain promissory notes owed by Lawrence J. Goldstein and others to Plaintiffs Graffs.

Defendant Lawrence J. Goldstein has performed all of his obligations under said Contracts.

In violation of their obligations under the said Contracts, Plaintiffs Graffs breached said Contracts by making a demand for immediate payment of the entire unpaid principal balances thereof, together with accrued interest, by a letter dated April 29, 1982, from Plaintiffs' attorney, Clifford L. Goetz, J.D.

Subsequently, Plaintiffs Graffs further breached the said Contracts by publication and consummation of foreclosure on the property known as the "North Shore Golf Course." Plaintiffs Graffs purchased the property at foreclosure, and are the current record owners of the property.

Since the aforementioned Contracts dealt with rights and interests in relation to real property, Defendant Lawrence J. Goldstein has no adequate remedy at law.

WHEREFORE, Defendant Lawrence J. Goldstein demands judgment in equity, ordering that:

a. Plaintiffs' specifically perform the Contracts of December 28, 1981;

b. The foreclosure by the Plaintiffs' Graffs, and the Trustees Deed conveying the "North Shore Golf Course" to Plaintiffs' Graffs, be set aside and held for naught.

The Graffs' motion for summary judgment attacked Count III on three grounds: First, the Graffs filed affidavits with their motion stating that they did not agree to enter into the deferral agreements; that the signatures above the lines marked George and Fred Graff on the first agreement were not their signatures; and that the second agreement did not bear their signatures. Because they had not signed the agreements, the Graffs argued that defendant Lawrence Goldstein was not entitled to the relief prayed for. Second, the Graffs argued that even if the agreements were enforceable, they were nevertheless entitled to foreclosure. Under the agreements, payments of principal and interest due on or after June 1, 1982 were to be paid when due. Graffs cited Lawrence Goldstein's deposition testimony (which has not been included in the record on appeal)

in which he allegedly admitted that the payments as due were never made by the terms of the agreements. Thus, Graffs maintain that they were entitled, by the terms of the agreements, to foreclose on December 29, 1982. Finally, the Graffs charged that Lawrence Goldstein had no standing to challenge the foreclosure because he did not have title to or any interest in the real estate in the Deed of Trust, the foreclosure of which he sought to have set aside. Graffs maintained that Goldstein was not a party to the Deed of Trust or either note (the $1,000,000 and $75,000 notes) given in consideration for the purchase.

On August 28, 1984, Lawrence Goldstein filed a memorandum in opposition to the Graffs' motion for summary judgment. Goldstein essentially maintained that there was a material question of fact as to whether the two originals of the deferral agreements were signed by the Graffs because the Graffs had only denied, by their affidavits, that they signed Exhibit Nos. 7 and 8; copies of the originals and not the originals themselves. Since the copies were never presented to the Graffs for their signatures, Goldstein said "so what" as to the Graffs denials. An affidavit of Michael Geigerman was filed by Goldstein in support of his memorandum in opposition. Geigerman had served as Lawrence Goldstein's attorney in matters related to North Port Development Company from approximately September, 1981 to July, 1983. Geigerman stated that he represented Larry Goldstein and David Goldstein, Larry's father, in negotiations for the deferral of principal and interest payments due on the $1,000,000 and $75,000 promissory notes. Geigerman states that the negotiation led to the drafting of the two deferral agreements. On December 29, 1981, Geigerman states that he telephoned Clifford Goetz, the attorney representing George and Fred Graff, to inquire if they would be at his law office that day to sign the agreements. Goetz allegedly replied that they would be there to sign. After the conversation, Geigerman went to Goetz's office with the agreements. When he arrived the Graffs were not there.

Geigerman states that Goetz told him that George and Fred Graff would come in later that afternoon to sign. Geigerman states further that Goetz read the agreements and told him that they were "fine," and satisfactorily expressed the agreement of the parties. Goetz allegedly told Geigerman that he would "get the Graffs in to sign the documents immediately." Geigerman states that when he left Goetz's office, he was convinced from his conversation with him that there was a firm deal, with or without signatures, and that the agreements represented the understanding of the parties.

Defendant Lawrence Goldstein brought to the attention of the trial court that his motion to compel discovery (i.e. the production of the two original agreements) was still pending. Goldstein maintained that summary judgment was inappropriate in this instance because he, by affidavit, had demonstrated the importance and materiality of the agreements sought to be discovered.

Lawrence Goldstein contended that even if the Graffs produced the original agreements without their signatures, a material question of fact still remained as to whether the agreements were nonetheless enforceable. Based on Michael Geigerman's affidavit, Goldstein argued that "it is clear" that the Graffs contemplated and agreed to be bound by the terms of the agreement even if they were not signed. Goldstein argued that Clifford Goetz, the Graffs attorney, had apparent authority to agree on behalf of the Graffs to accept the agreements.

As to standing to sue, Lawrence Goldstein maintained that he signed both agreements as an individual and not merely as a shareholder of North Port, and in fact North Port was not even a party to the second agreement. On August 29, 1984, the trial court sustained the Graffs' motion for summary judgment on Count III of Lawrence Goldstein's counterclaim and ordered lis pendens removed and stricken from the real estate that was conveyed by the trustee's deed.

On May 22, 1985, trial began on plaintiffs' claim on the $125,000 note and Count I of defendants Goldsteins' counterclaim for accounting and set-off. Before any witnesses were called, plaintiffs moved for a "judgment on the pleadings or an oral motion for summary judgment" on their claim against defendants. After a discussion that included reading of the petition, answer, interrogatories, depositions, requests for admissions, and exhibits into the record, the trial court "grant[ed] plaintiffs' motion for summary judgment for the face amount of the [$125,000] promissory note."

As a result of the summary judgment, the only claim left for trial was Count I of defendants' Goldstein counterclaim. Count I alleged that the plaintiffs were in possession of the collateral recited in the aforementioned security agreement securing the note. It was alleged further that "[b]y reason of the Plaintiffs' possession of personal property covered by a Security Agreement securing the note which Plaintiffs have sued upon in this case, Defendants Goldstein are entitled to a setoff of the value of the said personal property, and thus there is an urgent need to discover the value of said personal property." Goldsteins prayed for the court to order "an accounting of the value of the personal property" and "to allow a setoff of the value of said property against plaintiffs' claim against defendants Goldsteins." The jury returned a verdict in favor of the Goldsteins on Count I of the counterclaim in the amount of $20,000 and judgment was entered thereon.

In their first point on appeal, Goldsteins maintain that the trial court erred in granting plaintiffs' motion in limine and excluding evidence that plaintiffs allegedly failed to pay fair market value for real estate securing the $125,000 note at the foreclosure sale. The trial court ruled that the evidence was irrelevant because it was outside the parameters of the pleadings. Goldsteins argue that the deficiency in price paid at foreclosure was put in issue by Count I of their counterclaim. They maintain that the Count I allegation of set-off should be treated as the affirmative defense of accord and satisfaction under Rule 55.08, thereby requiring admission of evidence that Graffs failed to pay fair market value for the real estate securing the note.

■ It is clear that Count I of the counterclaim cannot be construed as an affirmative defense of accord and satisfaction based on the failure to pay fair market value at foreclosure. There is no plea in Count I for a set-off based upon a real property foreclosure. There is no mention of inadequacy of purchase price paid for the real estate. Count I only concerned set-off premised upon plaintiffs' retention of personal property recited in the security agreement serving as collateral on the note.

Nevertheless, defendants Goldsteins, in their reply brief, argue that their general denial that the note was due and owing was sufficient to put the matter in issue. Goldsteins maintain that this related to the defense of recoupment and the evidence was, therefore, relevant. However, recoupment is a defense in confession and avoidance and must be specifically pleaded. Rule 55.08; *Gee v. Gee*, 605 S.W.2d 815, 817 (Mo.App.1980). In *Witte v. Cooke Tractor Co.*, 261 S.W.2d 651, 659 (Mo.App. 1953), the defendant argued on appeal that it was entitled to a recoupment. In denying the point, the court concluded that "[d]efendant filed nothing but a general denial and cannot now claim the right to set off or recoupment.... In order to do so it must have been pleaded...." *Id.* at 659. *See Frazier v. Atchison, T. & S.F.R. Co.*, 104 Mo.App. 355, 78 S.W. 679, 680 (1904) (general denial did not provide basis for reducing or satisfying plaintiffs' claim by recoupment). Defendants' first point is without merit.

In their second point, defendants Goldsteins contend that the trial court erred in granting plaintiffs' motion for summary judgment on their claim for the $125,000 note because the procedure prescribed by Rule 74.04(c) was not followed. Rule 74.04 provides in pertinent part:

(c) Motion and Proceedings Thereon. The motion [for summary judgment]

shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. Judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

Defendants Goldstein note, as plaintiffs concede, that they were not served with the motion at least 10 days before the time fixed for the hearing because the motion was orally made on the day of trial. Thus, they claim that their right to procedural due process was violated.

Under Rule 74.04(c), a motion for summary judgment must be filed at least 10 days before the time fixed for hearing. The reason for the rule is to give the adverse party the time and opportunity to marshal and then present evidence at the hearing. *Lawson v. St. Louis-San Francisco Ry. Co.*, 629 S.W.2d 648, 649 (Mo. App.1982). *In Pennell v. Polen*, 611 S.W.2d 323, 324 (Mo.App.1981), the court held that the drastic remedy of a summary judgment, made and entered on the very day of trial, without other notice to the adversary, or acquiescence, is prejudicial and grounds for reversal.

Plaintiffs point to the fact that their trial counsel referred both to a "judgment on the pleading, or an oral motion for summary judgment." Plaintiffs maintain that the trial court rendered a judgment on the pleadings and not a summary judgment and, therefore, Rule 74.04(c) was not violated.

It is clear, however, that the order entered was a summary judgment. During the discussion on the motion, plaintiffs read into the record the petition, answer, interrogatories, depositions, request for admissions, and exhibits. This was for the expressed purpose of supporting the trial court's ruling. "No evidence is heard on a motion for judgment on the pleadings." *Ralph D'Oench Co. v. St. Louis County Cleaning & Dye Co.*, 358 Mo. 1072, 218

S.W.2d 609, 611 (1949) (quoting *Cammann v. Edwards*, 340 Mo. 1, 100 S.W.2d 846, 850 (1936)). But, when matters outside of the pleadings are presented and considered, as here, the adjudication must conform to the procedure for summary judgment. *Pennell*, 611 S.W.2d at 323. There can be no doubt that matters outside of the pleadings were considered so that the adjudication was governed by Rule 74.04(c).

Furthermore, if an issue of fact is presented by the pleadings, a motion thereon should be denied. *Ralph D'Oench*, 218 S.W.2d at 611. Here in their answer, the Goldsteins denied that payment was due and owing; essentially denying that they failed to pay the note when due. In an action on a promissory note, pleading and proving nonpayment is a necessary element. *See Kreutz v. Wolff*, 560 S.W.2d 271, 276 (Mo.App.1977). Goldsteins denied nonpayment. Thus, an issue of fact was created by the pleadings and judgment on the pleadings would not have been proper. As a result of plaintiffs' failure to comply with the requirements of Rule 74.04(c), the summary judgment entered upon their claim on the $125,000 note must be reversed.

In their third point, defendants Goldstein assert that the trial court erred in denying their motion for directed verdict on Count I of the counterclaim because as a matter of law, plaintiffs elected under the Uniform Commercial Code (U.C.C.) § 400.9–505(2), RSMo (1978) (hereinafter referred to as U.C.C. § 9–505(2)), to retain the personal property (golf course equipment) serving as collateral under the security agreement in satisfaction of the debt under the $125,000 note.

The rights of the secured party as to the collateral after default are contained in U.C.C. § 400.9–504, RSMo (1978) (hereinafter U.C.C. § 9–504) which provides that the secured party may "sell, lease, or otherwise dispose of the collateral in its then condition or follow any commercially reasonable preparation or processing." Subsection (2) of U.C.C. § 9–504 requires the secured party, upon disposition of the collateral, to "account to the debtor for any

surplus, and, unless otherwise agreed, the debtor is liable for any deficiency." There is an exception to the general rules of disposition set forth in § 9–504. Under U.C.C. § 9–505(2), the secured party, under certain circumstances, may retain the collateral in satisfaction of the debt. U.C.C. § 9–505(2) provides in pertinent part that:

... a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor and except in the case of consumer goods to any other secured party who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or is known by the secured party in possession to have a security interest in it. If the debtor or other person entitled to receive notification objects in writing within thirty days from the receipt of the notification or if any other secured party objects in writing within thirty days after the secured party obtains possession the secured party must dispose of the collateral under section 400.9–504. In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor's obligation.

The record does not indicate that plaintiffs proposed, in writing or otherwise, that they should retain the golf course equipment collateral in satisfaction of the indebtedness on the $125,000 note. Nonetheless, the Goldsteins urge that plaintiffs' actions, even absent written notice, manifest an intent to retain the collateral, thereby discharging the remaining obligation in its entirety.

Missouri has not yet resolved the consequences of the retention of collateral by a secured party, without a written notice of a proposal to do so. The notion that a secured creditor should be held to have retained collateral in satisfaction of a debtor's obligation, even though the security holder never proposed in writing to do so, has elicited a mixed response from various courts. *See* Annot. 55 A.L.R.3rd 651 (1974). *See also,* 9 U.C.C. Case Digest §§ 9505.10, 9505.11 (1983 revision).

There appears to be three approaches to the problem. Under the first approach "[a]n election to take the collateral in full satisfaction [of the debt] will not be implied; it must be made by written notice to the debtor." *Chrysler Credit Corp. v. Mitchell,* 94 A.D.2d 971, 464 N.Y.S.2d 96, 97 (1983). This view is apparently founded upon the belief that since § 9–505(2) provides a specific method by which the secured party can elect to retain the collateral to satisfy the obligation, such an election cannot be implied from conduct not specified by the code. *See, e.g., Priggen Steel Buildings Co. v. Parsons,* 350 Mass. 62, 213 N.E.2d 252, 253 (1966).

Both the second and third approach recognize, where the circumstances warrant, an implied election to retain collateral in satisfaction of the underlying obligation. The second approach holds that an election to retain can be implied from an unreasonably prolonged retention of the collateral by the secured party. Under this view, the determination of what constitutes an unreasonable period of time is a question for the trier of fact. *See, e.g., Swanson v. May,* 40 Wash.App. 148, 697 P.2d 1013 (1985); *Service Chevrolet, Inc. v. Sparks,* 99 Wash.2d 199, 660 P.2d 760 (1983); *Shultz v. Delaware Trust Co.,* 360 A.2d 576 (Del.Super.1976). This view apparently rests on the notion that to allow a secured party to retain possession of collateral and do nothing with it for an unreasonable period of time and then commence an action on the underlying obligation would be unfair to the debtor. *Bradford v. Lindsey Chevrolet Co., Inc.,* 117 Ga.App. 781, 161 S.E.2d 904 (1968).

The third approach requires proof of a manifest intent by the secured party to accept the collateral in satisfaction of the obligation. Seemingly, this intent cannot be inferred from the unreasonable retention of collateral alone. *Nelson v. Armstrong,* 99 Idaho 422, 582 P.2d 1100 (1978); *Jones v. Morgan,* 58 Mich.App. 455, 228 N.W.2d 419 (1975); In *Re Deephouse Equipment Co., Inc.,* 38 B.R. 400, 37 U.C.C.Rep. 1810 (Bankr.D.Conn.1984). This ap-

proach is premised, at least in part, on the belief that the debtor is protected by other provisions in the code and by the analogous common law concept of accord and satisfaction.

■ Under the circumstances of this case we need not decide at this time between the three approaches. Defendants Goldstein did not plead that plaintiff had retained the collateral in satisfaction of their obligation. The defensive theory first appeared in Goldsteins' motion for directed verdict which was filed at the conclusion of the evidence. Goldsteins concede that the issue of retention was not tried by implied consent, but maintain that it was tried on the basis of their pleadings which the trial court permitted to be amended to conform to the evidence. However, the only evidence presented on the issue was that plaintiffs acquired possession of the collateral on May 13, 1983, that plaintiffs, up to July 10, 1984, had not sold or disposed of the collateral, and that the Goldsteins never received an inventory or accounting of the assets. Lawrence Goldstein consistently maintained that defendants Goldstein were entitled to a credit or set-off on the $125,000 note for the collateral retained. No testimony or evidence was presented indicating that plaintiffs retained the collateral in satisfaction of the entire debt. The record fails to show that defendants Goldstein were proceeding on this theory. Moreover, Goldsteins' pleadings were allowed to be amended to conform to proof that set-off be had for property held (i.e. golf carts) by plaintiffs in addition to that listed in the security agreement. There was no request that the amendment relate to proof of plaintiffs' retention of collateral in satisfaction of the entire obligation. Therefore, because the issue was not pleaded, either originally or by amendment, and because the issue was not tried by consent, implied or otherwise, the trial court properly denied Goldsteins' motion for directed verdict.

In their fourth and fifth points, defendants Goldstein maintain that the trial court erred in granting plaintiffs' motion for summary judgment on Count III of Law-rence Goldstein's counterclaim. In point four they claim it was improper because discovery was still pending on a material issue of fact, i.e. whether the two deferral agreements were executed by the Graffs. In point five they argue that a genuine issue of material fact existed as to whether the parties entered into the two alleged deferral of principal and interest agreements in December, 1981. Both points will be considered together.

■ As recounted earlier, Goldsteins' motion to compel discovery was still outstanding at the time summary judgment was granted. Rule 74.04(f) allows the trial court to continue a summary judgment hearing upon request, when an opposing party needs additional time for discovery in order to respond to the motion. The opponent to the motion must call to the court's attention any uncompleted discovery and demonstrate by affidavit why it is material and important for the discovery to be completed. *Tobler's Flowers v. Southwestern Bell Telephone Company*, 632 S.W.2d 15, 19 (Mo.App.1982). Here, the affidavit of Lawrence Goldstein was submitted in opposition to plaintiffs' motion. Goldstein related that his request for production had not been complied with and that his motion to compel discovery was set for hearing on October 18, 1981. Goldsteins also stated that the requested documents materially related to whether the parties entered into the two deferral agreements of December, 1981.

■ Assuming arguendo that the Graffs did execute the two disputed agreements, we conclude that the trial court, nevertheless, properly granted summary judgment, and that the uncompleted discovery was immaterial. Under the agreements, payments of principal and interest on the $1,000,000 and $75,000 notes were to be deferred until June 1, 1982. At that time, the payments were to be paid when due. Under the agreements, if the payments were not made, the Graffs were entitled to accelerate the notes and demand payment in full and if payment was not forthcoming, the Graffs were entitled to foreclose. By letter dated April 29, 1982, plaintiffs made

**230**

demand for payment of the entire balance of the notes, together with accrued interest. We are not informed by the record as to when the Goldsteins received the letter, but we may assume that a letter mailed on or about April 29 would have been received prior to June 1, 1982. *German-American Bank v. Cramery,* 184 Mo.App. 481, 171 S.W. 31, 32 (1914). Although the demand contained in the letter was improper, Goldstein was not harmed or prejudiced thereby. No action to collect on the notes was taken until November 30, 1982, when notice of foreclosure was first published, and actual foreclosure did not occur until December 29, 1982. Moreover, the payments due under the alleged agreements on June 1, 1982 and thereafter were not made. In his affidavit opposing plaintiffs' motion for summary judgment, Goldstein did not deny that he had failed to make payment as due, nor did he allege that payment had been tendered at any time prior to actual foreclosure. Thus, the deed of trust was subject to foreclosure under the terms of the alleged deferral agreements. *See A. & R. Realty Co. v. Northwestern Mut. Life Ins. Co.,* 95 F.2d 703, 708 (8th Cir.1938). It is clear that the notes had been long in default and the record is barren of any evidence that Goldstein tried to remedy the situation on or after June 1, 1982. We conclude that summary judgment on Count III of Goldstein's counterclaim was providently granted.

For the foregoing reasons, the summary judgment with respect to the Graffs' action on the $125,000 note is reversed and cause remanded. All other actions of the trial court are affirmed.

STEPHAN, P.J., and GAERTNER, J., concur.