[No. 28410. Department Two. January 8, 1942.]

J. R. WILLIAMSON et al., Appellants, v. UNITED BROTHERHOOD OF CARPENTERS & JOINERS OF AMERICA
et al., Respondents.[1]

[1]Reported in 120 P. (2d) 833.

172

*W. H. Sibbald, Rummens & Griffin,* and *Hull & Murray,* for appellants.

*Edgar P. Reid* and *Meier & Meagher,* for respondents.

JEFFERS, J.—This is an appeal by J. R. Williamson and 113 other plaintiffs from a judgment entered on October 17, 1940, by the superior court for Cowlitz county, dismissing the causes of action of each and all of the plaintiffs, in an action instituted against the United Brotherhood of Carpenters and Joiners of America, a voluntary association (hereinafter referred to as the brotherhood), and A. W. Muir.

The second amended complaint, upon which this action was tried, consists of 141 pages, and is divided into 114 causes of action; in other words, a purported cause of action is alleged as to each of the 114 plaintiffs. The basic allegations of each cause of action are the same, and may be stated as follows:

The brotherhood is a voluntary association, comprising among its members many thousands of car-

penters and joiners throughout the United States and Canada, organized as a labor union pursuant to, and governed by, a constitution and body of laws. It is affiliated with the American Federation of Labor, a federation of labor unions comprising more than five million members in the United States and Canada, and has, by agreement with the A. F. L., the exclusive right of issuing charters to sawmill and woodworking unions.

It is alleged that A. W. Muir has been, and is, a member of the general executive board of the brotherhood, elected from division No. 6, comprising the states of Washington, Montana, Oregon, Idaho, Wyoming, California, Nevada, Utah, Colorado, Arizona, New Mexico, the territory of Alaska, the province of British Columbia, the state of Mexico, and the Hawaiian Islands.

It is further alleged that, prior to April 3, 1935, these plaintiffs and approximately fifteen hundred other workmen were associated together as a logger and sawmill workers union, having a charter which had been issued by the A. F. L., and that in March, 1935, defendant Muir, who was then a member of the executive board and general representative of the brotherhood, came to the city of Longview, where the local had its headquarters, and represented to these plaintiffs and their associates that the brotherhood had been vested by the A. F. L. with full and exclusive authority to issue charters to union labor locals in all woodworking industries, especially sawmill and timber workers; that Muir represented to these plaintiffs and their associates that they were greatly underpaid, and that, if they would form a labor union local and take a charter from the brotherhood, Muir would be able to get for them an increase of wages of between thirty and thirty-five cents per hour; that Muir further represented that he and the brotherhood would assist these plaintiffs in

the event of a strike, and that the change of working conditions which would be effected by their becoming members of the brotherhood would be extremely advantageous to plaintiffs.

It is further alleged that, relying upon such representations, plaintiffs *attended a labor convention held in Aberdeen, Washington,* which convention was attended by a large number of representatives from many of the labor unions of western Washington, who were engaged in sawmill and timber work; that Muir, as representative of the brotherhood, attended the convention, and there repeated and reiterated the statements and promises which had been made by him to these plaintiffs; that at the convention *it was voted by the delegates* of various labor union locals, including the representatives of these plaintiffs, *that a general demand would be made upon the employers for a wage scale of seventy-five cents for all common labor, and that, in the event such demand was not met, or a compromise reached with the various representatives of the locals, a strike would be called.*

It is further alleged that such procedure was suggested, encouraged, and advocated by Muir, and that at the meeting arrangements were made by Muir with the various delegates for the issuance by the brotherhood of a charter to each local.

It is also alleged that thereafter, on April 3, 1935, a charter was issued, and these plaintiffs ceased to be the former local and become organized as Sawmill & Timber Workers Local No. 2504, and that ever since that date Local 2504 has been and still is a voluntary association, comprising many hundreds of sawmill and timber workers, living or employed in the vicinity of Cowlitz county; that Local 2504 is governed by the constitution and laws of the brotherhood, and its rights and obligations are fixed thereby.

It is also alleged that, at all times mentioned in the complaint, up to and including May 10, 1935, plaintiffs were employees of either the Long-Bell Lumber Sales Corporation or the Weyerhaeuser Timber Company, which companies employed and still employ several thousand men; that, prior to May 19, 1935, a labor dispute arose between the plaintiffs and their employers over wages, hours of labor, and their right to be represented by Local 2504, which dispute was promoted, encouraged, and carried on by defendants, particularly by Muir, acting for himself and the brotherhood; that a part of the dispute was over collective bargaining; that, as a result thereof, on May 19, 1935, plaintiffs and all other members of Local 2504 went on strike, and from then until June 15, 1935, all of the plaintiffs, acting through the agency of Local 2504, were negotiating with their employers for an adjustment of this dispute.

It is further alleged that on June 15, 1935, defendants, wrongfully and unlawfully designing to deprive plaintiffs of the prestige and protection of their affiliation with the brotherhood, and to force them to work for wages and under conditions repugnant to them, without the knowledge or consent of these plaintiffs or their associates, and without authority or consent from Local 2504, made and entered into an agreement with plaintiffs' employers, to wit, the Long-Bell Lumber Sales Corporation and the Weyerhaeuser Timber Company, by which defendants wrongfully and unlawfully attempted to bind plaintiffs and all members of Local 2504, and to force them to return to work at wages and under conditions repugnant to them; that the agreement was wholly unauthorized and in violation of the agreement and understanding which had been arrived at between the members of Local 2504 and defendants; that the employers and de-

fendants conspired together to cause the brotherhood to arbitrarily revoke the charter of Local 2504, without notice, without hearing, and without preferring any charges against Local 2504, and to issue in lieu thereof charters to new local unions known as Sawmill & Timber Workers Locals Nos. 2640, 2641, and 2642, in order that, by creating such local unions, the employers might be enabled to enter into employment contracts enjoying the prestige and protection of the A. F. L. and the brotherhood, and thereby avoid the necessity of negotiating with plaintiffs through Local 2504.

It is further alleged, that, pursuant to such unlawful conspiracy, and on or about June 15, 1935, the two companies entered into a contract with the brotherhood and Locals 2640, 2641, and 2642, by the provisions of which none of the plaintiffs, and no persons except members of such locals, should be employed by the two employing companies, and whereby none but employees of those companies might become members of such locals; that, pursuant thereto, these plaintiffs were publicly defamed and blacklisted by their names being falsely and maliciously placed by the companies on a general reference list for circulation as undesirable and/or incompetent employees, were driven by force and violence from the employment offices of these companies, have ever since been and still are denied the right of employment by either of such companies, and have been and still are unable to secure other adequate employment.

Each individual plaintiff then alleged certain facts, for the purpose of showing his individual damage. With a few exceptions, each of the plaintiffs then alleged that he had been damaged in the sum of two thousand dollars or twenty-five hundred dollars.

Defendants answered separately, admitting the existence and business of defendants, the issuance of a

charter to Local 2504, its subsequent attempted cancellation, and the issuance of the three charters hereinbefore referred to, denying the other material allegations of the complaint.

The cause was tried to the court without a jury, which made and entered findings of fact, conclusions of law, and judgment in favor of defendants, dismissing plaintiffs' causes of action and all of them. This appeal by plaintiffs followed.

Appellants make nine assignments of error, and reference will be made to those material to a decision of this case as they are discussed.

It is difficult to determine upon what theory appellants presented this case to the trial court, in view of the contention made by appellants in their opening brief and reply brief, and in view of what happened during the trial. On page two of their opening brief, appellants state:

"The specific wrongful acts on which the action is based consist of fraudulent representations, bad faith and violation of promises made by the defendants to induce the plaintiffs and other workmen similarly siutated to become members of the defendant organization; wrongful usurpation of their right to settle their own labor dispute; wrongful cancellation of their union charter; creation of substitute locals by which the employers were able to dictate who might or might not be members of the union; wrongful confiscation of the union funds and defamation of the workmen; all resulting in the plaintiffs' losing their union affiliation, their jobs, being branded as undesirable workmen throughout the northwest and unemployment generally."

On page four of their reply brief, appellants state:

"This is an action for the recovery of damages sustained by the appellants arising out of the breach by the respondents of a contract. The contract which was breached and for which damage is sought is the charter

which was issued to Local No. 2504 in pursuance of the constitution and laws of the United Brotherhood of Carpenters and Joiners of America."

It appears from the supplemental statement of facts that it had been agreed that testimony would first be submitted on the first ten causes of action. After this testimony was in, counsel for respondents submitted a challenge to the evidence, and after argument of counsel, Mr. Sibbald, attorney for appellants, made the following statement:

"When this action was first started, the Long-Bell and Weyerhaeuser were included as defendants and later, it appearing that the fact that the two companies would hire many of these plaintiffs if they had not been suing the two companies for that reason the cases were dismissed as to the two companies and, as will be shown by the evidence here, a great many of the plaintiffs went back to work with their former employers, for that reason we have not attempted to prove that there was active blacklisting of these men by their former employers, but the very fact of the strike occurring as it did acted as a blacklisting of these men generally throughout the northwest."

"We therefore withdraw from the second amended complaint the allegation of conspiracy between the defendants, and each of them, and the employers of the plaintiffs, namely, the Long-Bell Lumber Company and the Weyerhaeuser Timber Company. Also, we withdraw from the second amended complaint the allegation of blacklisting of the plaintiffs by the Long-Bell Lumber Company, the Weyerhaeuser Timber Company and other companies in the northwest, at the instance of the defendants."

It seems to us that, when appellants withdrew from the complaint the allegation relative to conspiracy and blacklisting, they took the very heart out of the complaint, in so far as any allegations are concerned which might form the basis for a recovery. However, the trial court denied the challenge to the evidence, and the trial

proceeded, evidence being submitted on behalf of all the appellants and on behalf of respondents.

It is impossible, of course, to set out the testimony of appellants, nor do we think any purpose would be served thereby. We have carefully examined the testimony, and are of the opinion that the trial court was justified in finding, as it did, from the evidence that the brotherhood is a voluntary association comprising thousands of members; that it has been and now is affiliated with the A. F. L.; that, in the spring of 1935, the officers of the A. F. L. held a meeting in Washington, D. C., at which time they passed a resolution to be thereafter submitted to a convention to be held in San Francisco, to the effect that all employees affiliated with the A. F. L., having anything to do with logging, lumbering, or the processes of wood manufacturing, should form their own locals in their various jurisdictions and receive charters from, and become affiliated with, the brotherhood; that, shortly thereafter, at a convention held in San Francisco, this resolution was adopted.

The court further found that, during the month of March, 1935, respondent A. W. Muir came to the northwest and to the vicinity of Kelso, in an effort to persuade the members of the old local, being A. F. L. Local No. 18260, to organize and accept a charter under the brotherhood, and remain members of and affiliated with the general A. F. L. organization, through their affiliation with the brotherhood; that Muir was active in the interests of local labor conditions, and in the formation and organization of a general strike; that he addressed Local 18260 many times in an effort to have the members organize as members of a local chartered by the brotherhood; that he told them, among other things, that their wages should be increased, and promised them a raise to seventy-five cents per hour

as a base scale for common labor; that Muir further stated that there were four hundred thousand carpenters who had been working practically alone in the maintenance of union labor, that now jurisdiction over all working crafts had been given to the brotherhood, that the brotherhood would have jurisdiction over the entire matter, including logging and all woodworking processes, and that it would be impossible for any woodworking or sawmill outfit to stand against them; that he further stated, in substance, that all employees engaged in lumber, logging, and all woodworking processes were to be organized in the whole northwest.

The court further found that the strike was to be in conjunction with other locals in the northwest; that all lumber and woodworking plants would have a union label, and that carpenters would not use or work the lumber unless it carried the union label; that the locals were to have grievance committees in the mills, and the companies would not be permitted or allowed to discharge any worker unless the grievance committee consented; that, if a strike was called, the men were to stay out until they obtained seventy-five cents an hour as the base wage, and the union label; that any agreement made by the brotherhood or its agents with the employers would not be binding until such new local should have accepted it, and that such new local would have the right either to accept or reject any proposed contract.

The trial court further found that the resolution passed by the San Francisco convention worked a dissolution of all the old unions of loggers and sawmill workers affiliated with the A. F. L. and compelled all those locals either to form new unions under, receive charters from, and become affiliated with the brotherhood, or else lose their affiliation as members of the A. F. L.

The trial court further found that, some time prior to May 6, 1935, a convention was called at Aberdeen, Washington, by the various lumber and sawmill workers locals of the northwest, including Oregon and Washington, which convention was composed of delegates representing the lumber and sawmill workers of that district; that this convention was called for the purpose of discussing labor conditions in the northwest, to devise ways, means, and policies to better such conditions, and to make demands on the employers for better conditions, including a raise in the hourly base pay; that it voted, among other things, that a demand be made on the employers for a minimum wage of seventy-five cents per hour for common labor, and that, if such demand was not complied with, a general strike of all loggers and sawmill workers in the northwest be called, such strike to take place on May 6, 1935.

The court further found that Local 18260 affiliated with and accepted a charter under the brotherhood, on April 13, 1935, and was given a number, Local 2504, of which local all the appellants were and are members; that, following the Aberdeen convention, and in conformity with the resolution there adopted, Local 2504 made its demand upon the employers in its vicinity, particularly the Weyerhaeuser Timber Company and the Long-Bell Lumber Company, and such companies agreed to grant a general increase of five cents per hour to all of their employees, but refused to grant a higher raise; that thereupon Local 2504 held a meeting and voted to call a strike to take effect on either May 6th or May 9th, which strike lasted until about June 1, 1935, during which period the mills at Kelso and Longview were closed; that, at the same time, a strike of all the lumber and sawmill workers was in progress in the northwest, in conformity with the policy of the

Aberdeen convention, in an effort to effect all over the northwest the objects determined upon at the Aberdeen convention.

The court further found that a meeting of Local 2504 was held in Longview on May 29, 1935, at which meeting a Mr. Lum was present, representing Mr. Muir, who was not present; that Mr. Lum read a message from Muir, to the members of Local 2504, in which he stated that the strike was lost, and advised the men to go back to work; that a vote was taken, and it apparently was voted to end the strike and return to work, and thereafter the workmen, including appellants, returned to work, on or about June 1, 1935, and worked for two or three days; that, after the men had gone back to work, and had worked for two or three days, a picket line was put at the mills by the shingle weavers local; that this local had nothing to do with Local 2504; that a picket line having been formed, appellants and many other members of Local 2504 refused to pass through it; that the picket line was removed almost immediately by the shingle weavers union; that, immediately subsequent thereto, at a meeting of Local 2504, it was voted by the members to go out on strike again; that appellants were active in this action, and the members of Local 2504 immediately established a picket line, and the mills were again closed; that appellants were all actively engaged in the strike, and most of them were in the picket line, helping to maintain it; that the second strike was called by members of Local 2504 contrary to the wishes and directions of A. W. Muir, and neither of the respondents had anything to do with calling the second strike, which lasted until the last of July or the first of August.

The court further found that a clear analysis of Mr. Muir's statement indicated that it consisted of statements of future things to happen, or which it was

hoped would happen, but dependent upon many things, and that appellants could not have been misled thereby.

In regard to what may be termed the second strike, or the decision of Local 2504 to again go on strike after the picketing by the shingle weavers union, the trial court found that the second strike was called by Local 2504 on its own volition, and contrary to the wishes or authority of respondents; that the evidence produced by appellants was that respondents had nothing to do with the calling of the second strike; that the second strike closed the mills about June 3, 1935, and they did not open until approximately July 1, 1935, at which time the gates were thrown open and all striking employees who desired had the privilege of going back to their jobs without discrimination; that appellants did not desire to go back, but made every effort to keep established and maintain a strike and their picket line.

The court further found that, when appellants thereafter went back to their jobs, they were all informed by the companies that their places had been filled; that, the question of conspiracy having been withdrawn, respondents would not be responsible, even if there had been evidence of blacklisting of appellants by the companies.

The court further found that, notwithstanding the fact that the two employing companies were picketed, they resumed operations on July 1st, and between that date and July 15th, sixty-five per cent of the employees of the Weyerhaeuser Timber Company went back to work, and from eighty-five to ninety per cent of the Long-Bell Company employees went back to work; that between those dates any of the appellants would have received their former employment if they had applied for same; that, after the picket line was withdrawn, about August 1st, some of the appellants tried to get back their former positions, but were refused

employment, in many instances because their positions had been filled by others, and some because they had instituted suit against the companies; that some went to other jurisdictions, where they received employment immediately, others went on WPA, some could not secure employment on account of age, but none of appellants were refused employment by reason of the attempted revocation of the charter of Local 2504, or by reason of the blacklisting.

As we have stated, much of the testimony which would support the above finding was not disputed, and, in our opinion, there was sufficient testimony to support all of the findings.

Did the findings, then, support the judgment of dismissal which was entered?

It is very evident that appellants suffered no damage by reason of any claimed representation by Muir which may have tended to induce them to take out a charter with the brotherhood. We think there are at least two reasons why the judgment of the trial court was right, and that regardless of the theory of appellants.

The judgment must be sustained because, admitting that Muir made all the representations claimed, still, in our opinion, such representations, as found by the trial court, were statements of things to happen in the future, or which it was hoped would happen. It is evident, we think, that the statements made by Muir were all made with the idea in mind, and so understood by appellants, that whether or not what he hoped to accomplish for the union would become a reality was dependent upon the cooperation of the woodworking industry of the entire northwest, whether or not the employers, by agreement or as the result of a strike, would meet the conditions asked by appellants, and other circumstances. In our opinion, such representa-

tions were not made with the idea that they could or would be brought about unless the workmen were able to bring such pressure to bear upon the employers as to compel them to meet the conditions required by the union. That such statements or representations are not actionable, see *Stewart v. Larkin*, 74 Wash. 681, 134 Pac. 186, L. R. A. 1916B, 1069; *Penney v. Pederson*, 146 Wash. 31, 261 Pac. 636; *Jewell v. Shell Oil Co.*, 172 Wash. 603, 21 P. (2d) 243; *Webster v. Romano Engineering Corp.*, 178 Wash. 118, 34 P. (2d) 428.

Admitting, however, only for the purpose of this argument, that Muir's representations did induce appellants to strike the first time, and that appellants relied on such representations and the promise that Muir and the brotherhood would assist them in such strike, still no damage is claimed to have resulted from the first strike, whatever damage may have occurred being clearly the result of the second strike and the failure of appellants thereafter to obtain employment from the two companies mentioned, or other employers in this and other jurisdictions.

It is unquestionably true, as appears from the testimony, that, prior to the time the first strike was called, and up to the time appellants and other members of Local 2504 went back to work, Muir did all he possibly could to procure for Local 2504 the conditions to which he had stated the union was entitled. It does not appear that any written contract was ever entered into between Muir or the brotherhood and the two employing companies. It is true that Muir, representing Local 2504, did procure a tentative agreement from the companies, but this was rejected by Local 2504.

It is undisputed that respondents had nothing to do with the strike called after the men had gone back to work, and after the picketing by the shingle weavers. Such strike was, in fact, contrary to the wishes of Muir

and the brotherhood, it being their opinion that, for the time being at least, the union had secured all it was possible to secure from the companies, and that it was better for them to go back to work and accept the conditions offered by the companies, than to strike. This being true, it is difficult to understand how respondents could be liable for any damages, if such there were, to appellants, because they were refused employment by these companies or others. Whatever loss or damage occurred was, in our opinion, clearly the result of the action of appellants and their associates, for which they themselves were solely responsible.

While we believe that what we have said answers generally the contentions of appellants, and is decisive of this case, appellants have made certain specific contentions to which we shall refer briefly.

■ Appellants contend that the court erred in refusing to make findings covering all the material issues of the case. This contention is based upon the claim of appellants that the trial court made no finding in regard to the attempted unlawful cancellation of the charter of Local 2504, or the attempt to confiscate the funds of the workmen, or in reference to a libelous circular, exhibit No. 1.

A trial court is certainly not required to make findings in regard to every item of evidence introduced in a case. In this case, the trial court made exhaustive findings on all the material issues, and concluded therefrom that appellants were not damaged by any of the claimed unlawful acts of respondents. In its memorandum opinion, the trial court specifically referred to the holding of this court (*Cox v. United Brotherhood of Carpenters etc.*, 190 Wash. 511, 69 P. (2d) 148) to the effect that the charter of Local 2504 had never been legally revoked, that such union was an existing

organization, and that locals 2640, 2641, and 2642 were legal unions. The trial court specifically found that appellants suffered no damage by reason of the unlawful acts or omissions of respondents. The unlawful acts or omissions referred to in the findings must have meant the claimed representations of Muir, the attempted revocation of the charter of Local 2504, and the other acts set out in the complaint. In fact, the court found that none of these appellants had been refused employment because of the attempted revocation of the charter of Local 2504.

Appellants refer to exhibit No. 1, stating that this was a libelous letter, and that it was one of the unlawful acts of respondents. The evidence shows that this letter was circulated by Muir in the locality of Longview, for the purpose of warning the men in the union against being lead into unwarranted strikes through the advice and propaganda of individuals termed "communists" and "reds," which Muir believed, and the evidence at least to some extent shows, were influencing the men in the unions, to their detriment. We have read this letter, and while it makes some strong statements, it does not, in our opinion, contain anything which could be considered libelous as to appellants, and says nothing detrimental to them, unless it be that some members of the union followed the advice of the "reds" and left their jobs.

There is no testimony that Muir or the brotherhood ever had, or that they or either of them now have, any funds of Local 2504. After the attempted revocation of the charter of Local 2504, the officers of that local, or some of them, deposited the funds of the local in the bank, and thereafter, by order of court, such funds were ordered returned to the proper officers of Local 2504.

The trial court committed no error in the respect claimed by appellants.

Under specification of error No. 2, appellants contend the court erred in finding that, although Muir's statements were extravagant in some respects, they were statements of things to happen in the future, or which it was hoped would happen, and that appellants could not have been misled thereby. As we have stated, we are of the opinion this finding is supported by the evidence. We quote from what appears to have been the testimony of appellant Joe Key, given in his deposition appearing on page 191 of the supplemental statement of facts:

"That although they [referring to Local 2504] heard Mr. Muir make representations as to procuring a minimum wage of 75¢ per hour, and for better working conditions for the members of Local No. 2504, the great majority said they knew that this could only be obtained with the consent of the employers, depending upon the success of the strike, and a few said they knew the outcome was uncertain and speculative."

Under specification of error No. 3, appellants contend the court erred in finding the second strike was called by Local 2504 of its own volition, and contrary to the wishes and authority of respondents, arguing that there was no second strike and no vote taken for any second strike, but that it was one continuing strike.

While the testimony is not as clear as it might be, there was some evidence to warrant the finding that the union voted to again go on strike after they had gone back to work, and after they had been stopped by the pickets of the shingle weavers. As to the second strike not being called by Local 2504, we again quote from page 191 of the supplemental statement of facts:

"A vote was taken by the members present, and it was voted to end the strike and go back to work; [this was at the meeting of Local 2504 at which Mr. Lum read the letter from Mr. Muir, advising the union that the strike was lost and advising them to go back to work] that practically all of said plaintiffs returned to work on or about the first day of June, 1935, and worked two or three days. After the men had gone back to work and worked two or three days, a picket line was formed at the mills by the shingle weavers' local, that local having no connection with Local No. 2504. It was voted by the members of said local to *again go out on strike.*" (Italics ours.)

But whether or not there was an actual vote on this question, it is apparent from all the testimony that appellants and many others of Local 2504 did strike, and did picket the plants of the two companies, after they had agreed to go back to work following what we term the "first strike," and that in so striking they did so over the objection and advice of respondents and against their wishes, and certainly in so doing they did not and could not have relied upon representations made by Muir. We think there is ample testimony to support a conclusion that Local 2504 at least ratified this second strike, so it seems to us that, even if we should assume that Muir made representations or promises which were actionable, the line of causation was broken when appellants, of their own volition, went out a second time, and if any damage or injury did result to them, it was, in our opinion, caused by the second strike, for which respondents were in no way responsible.

It is further contended by appellants that the court erred in finding that "all striking employees who desired had the privilege of going back to their jobs without discrimination," and that "the plaintiffs did

not desire to go back" to work. There is ample evidence to support the finding of the trial court that after the first strike was called off, appellants and all the old employees went back to work; that after the second strike the mills opened about July 1st, at which time the gates were thrown open and all striking employees who desired could have gone back to work, up until about July 15th; that, after the last named date, and after the strike was broken about August 1st, when appellants applied for their old jobs, they were told either that their places had been filled, or that the companies were not hiring anyone who was suing them. At no time were any of the appellants refused employment by the companies mentioned or by any other concerns, because of the attempted cancellation of the charter of Local 2504.

We are further satisfied that the testimony supports the finding of the trial court that appellants suffered no damage by reason of any claimed unlawful act of respondents. As we have stated, there is no testimony that any of these appellants were denied employment because of the attempted revocation of the charter of Local 2504, but such failure to obtain employment was due, in our opinion, to the acts of appellants in going out on the second strike, and to the publicity given to such action throughout the northwest, either by the mill companies hereinbefore mentioned, or someone other than respondents.

In conclusion may we say that, while we doubt if the case was tried on the theory advanced by appellants in their reply brief, we have attempted to answer the arguments advanced by appellants to support that theory, as well as the theory set out in their opening brief, feeling that, under the testimony in this case, appellants could not recover on either theory, and that

the judgment of the trial court was right and must be sustained.

The judgment of the trial court is affirmed.

ROBINSON, C. J., BEALS, BLAKE, and SIMPSON, JJ., concur.

