[No. 6271-6-III.   Division Three.   March 28, 1985.]

DONALD E. SWANSON, ET AL, *Respondents*, v.
DUANE MAY, ET AL, *Appellants.*

---

*Judith A. Butler, Lukins & Annis, P.S., Robert J. Rohan,* and *Schweppe, Krug & Tausend, P.S.,* for appellants.

*Guy M. Zajonc, Valerie D. Jolicoeur,* and *Zajonc, Tripp, Jolicoeur & McNallen,* for respondents.

MCINTURFF, J.—Donald E. Swanson brought this claim against Duane May[1] for losses sustained pursuant to a farm equipment purchase/lease agreement. The court awarded Mr. Swanson a deficiency judgment for losses accrued through the disposition of repossessed collateral. On appeal, Mr. May principally contends the court erred by awarding the deficiency because (1) Mr. Swanson retained the property for an unreasonable time, which should preclude any deficiency; and (2) the contract was void because it was usurious. We affirm.

On June 1, 1980, Mr. Swanson entered into the agreement which provided that Mr. May pay $24,500 plus interest, computed at 36 percent per annum and compounded monthly. The agreement also afforded Mr. May the option to purchase the equipment at the end of the lease for $4,810, plus tax. When Mr. May took possession of the equipment, he had paid Mr. Swanson $1,000 and had a remaining balance of $31,000.

As Mr. May did not make any further payments, the debt became delinquent and Mr. Swanson peacefully repossessed the equipment apparently in August 1981. Eight days after he had repossessed the equipment, Mr. Swanson made the first of several attempts to notify Mr. May of his decision to sell the equipment to the highest bidder and to collect any deficiency. Mr. Swanson first attempted notice by certified mail; and after four endeavors to deliver the letter, the post office returned it unopened.

---

[1] Although the marital communities are parties to this action, we will refer to the parties in the singular.

Mr. Swanson also conversed by phone with Mrs. May regarding his plans to dispose of this equipment.

Mr. Swanson marketed the collateral solely by locating it next to a large "For Sale" sign on his property, which borders a highway; he had used this method for the previous 7 years to sell other farm equipment. Apparently, no public auction was considered or held and no other effort was made to dispose of the collateral. Mr. Swanson did not use the equipment while in his possession before sale.

Although the equipment remained unsold for over 14 months, Mr. Swanson and his expert witness testified both the poor operating condition of the equipment and generally dismal market conditions hampered immediate sale. Mr. Swanson repaired some of the equipment and the first piece sold in October 1982; the remaining equipment sold in April 1983. On motion for partial summary judgment, the court determined the lease was intended as security for the payment of the purchase price, thereby falling within the scope of RCW 62A.9; that the equipment was not purchased for personal, family or household use;[2] and that the agreement contained a usurious rate of interest. At trial, the court determined the usury statute, RCW 19.52.090, did not apply to this contract and that the equipment was sold in a commercially reasonable manner.

First, Mr. May contends the court erred in granting the deficiency judgment because Mr. Swanson retained the repossessed collateral for more than 1 year before sale. He claims such delay precludes Mr. Swanson's right to a deficiency, citing *Service Chevrolet, Inc. v. Sparks,* 99 Wn.2d 199, 660 P.2d 760 (1983).

RCW 62A.9-507 provides the framework in which a creditor may choose between two basic methods of obtaining the benefit of his bargain from a defaulting debtor. Where, as in this case, no purchase of consumer goods is involved, the creditor may repossess the goods subject to

[2]This finding means the sale was for equipment and not consumer goods. RCW 62A.9-109(1).

his security interest and either retain them in full satisfaction of the debt, RCW 62A.9–505(2),[3] or resell them and apply the proceeds to the debt, RCW 62A.9–504(1).[4] In the latter case, the debtor is liable for any deficiency. RCW 62A.9–504(2).

The seminal issue, then, is whether the *Sparks* rule, which implies an election of remedies where the creditor retains the property for an unreasonable period of time, applies here. In *Sparks,* a bank repossessed a financed vehicle and returned it to the auto dealer, who informed

---

[3]RCW 62A.9–505(2) provides:

"In any other case involving consumer goods or any other collateral a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modifying his rights under this subsection and except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state. If the secured party receives objection in writing from a person entitled to receive notification within twenty–one days after the notice was sent, the secured party must dispose of the collateral under RCW 62A.9–504. In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor's obligation."

[4]RCW 62A.9–504 reads, in pertinent part:

(1) A secured party after default may sell . . . any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. . . .

. . .

(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. . . . [R]easonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor . . . and . . . to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.

When consumer goods are involved, however, the debtor "shall not be liable for any deficiency after the secured party has disposed of such collateral under RCW 62A.9–504 or has retained such collateral in satisfaction of the debt under . . . RCW 62A.9–505." RCW 62A.9–501(1).

the debtor within 2 to 4 weeks after repossession that the dealership would sue for the outstanding balance. Concluding the auto dealer had no right to deficiency judgment, the court held the dealer had elected to keep the collateral in full satisfaction of the debt, reasoning there "must . . . be a *'reasonable' limit* to the length of time a secured party is permitted to hold collateral before it is deemed to have exercised its right to retain that collateral in satisfaction of the obligation." *Sparks,* at 204.

Here, the court distinguished *Sparks* from the instant case because *Sparks* dealt specifically with a consumer transaction and RCW 62A.9–501(1). That section is unique to Washington State and precludes a creditor from obtaining the deficiency judgment when the debtor's collateral has been repossessed "in full satisfaction" of the debt, or the creditor has sold the collateral pursuant to RCW 62A.9–504.

Although *Sparks* dealt with consumer goods, there are several reasons why the rule applies here. First, the *Sparks* court did not limit the ruling solely to consumer transactions. Second, the court, while applying RCW 62A.9–501(1), adopted the rule as established in several other jurisdictions: a secured party's unreasonably long retention of collateral will imply an election of remedy pursuant to RCW 62A.9–505(2).[5] Third, the rationale behind

---

[5]The court cited the following cases: *Northern Fin. Corp. v. Chatwood Coffee Shop, Inc.,* 4 U.C.C. Rep. Serv. 674 (N.Y. Sup. Ct. 1967) (U.C.C. § 9–505(2) notice provisions relieve creditor only of obligation to dispose of property according to U.C.C. § 9–504); *Brownstein v. Fiberonics Indus., Inc.,* 110 N.J. Super. 43, 264 A.2d 262 (1970) (creditor's failure to provide notice of intent to retain pursuant to U.C.C. § 9–505(2) enables receiver/debtor to either order sale of equipment or make secured party keep the collateral in full satisfaction of debt); *Bradford v. Lindsey Chevrolet Co.,* 117 Ga. App. 781, 161 S.E.2d 904 (1968) (secured party's failure to notify debtor for 50 days after repossession and no sale for 16 months precluded deficiency judgment rights); *National Equip. Rental, Ltd. v. Priority Elecs. Corp.,* 435 F. Supp. 236 (E.D.N.Y. 1977) (even if computer equipment was involuntarily retained, retention is implied); *Haufler v. Ardinger,* 28 U.C.C. Rep. Serv. 893 (Mass. Dist. Ct. 1979) (equipment repossessed and used for 38 months is conduct constituting election to retain collateral in satisfaction of debt); 4 R. Anderson, *Uniform Commercial Code* § 9–505:5 (2d ed. 1971) (retention of prop-

the *Sparks* rule applies equally here. That is, a creditor's extended possession affects the debtor negatively in two ways: such possession deprives the debtor of the use and benefit of the collateral; and, the debtor's investment depreciates in direct proportion to the length of time the creditor retains the property. *See, e.g., National Equip. Rental, Ltd. v. Priority Elecs. Corp.,* 435 F. Supp. 236, 239 (E.D.N.Y. 1977); *Haufler v. Ardinger,* 28 U.C.C. Rep. Serv. 893, 897 (Mass. Dist. Ct. 1979).

As the *Sparks* court stated the rule, a secured party is permitted a reasonable length of time "to hold collateral before it is deemed to have exercised its right to retain that collateral in satisfaction of the obligation." *Sparks,* at 204. The determination of what length of time is "reasonable" is a question for the trier of fact. *Sparks; see also Mount Vernon Dodge, Inc. v. Seattle–First Nat'l Bank,* 18 Wn. App. 569, 587–88, 570 P.2d 702 (1977); *Shultz v. Delaware Trust Co.,* 360 A.2d 576, 578 (Del. Super. Ct. 1976).

■ Immediately after repossession, Mr. Swanson began his attempts to sell the collateral on his property which adjoins a highway, but did not use public auction or newspaper advertising. It must be noted that the equipment was damaged and it was necessary for Mr. Swanson to repair it. Expert testimony also explained the depressed nature of the farm equipment market and the lack of funds available from lending institutions to purchase that type of equipment. Applying the *Sparks* rule to these facts, we find substantial evidence supports the finding that Mr. Swanson disposed of the property within a reasonable time; thus no election of remedy is implied. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

■ Next, Mr. May alleges that regardless of the *Sparks* rule, the court erred in concluding Mr. Swanson had disposed of the property in a commercially reasonable manner. The sale of collateral on default is controlled by RCW 62A.9–504. Every aspect of the disposition, including the

---

erty for excessive period of time without disposing of it may preclude deficiency).

method, manner, time, place, and terms must be commercially reasonable. RCW 62A.9–504(3). The code also imposes an obligation of good faith on the performance of all duties under the code. *Sparks,* at 204; *Cavell v. Hughes,* 29 Wn. App. 536, 539, 629 P.2d 927 (1981); *see* RCW 62A.9–507, Official Comment 1. This means the creditor must act to protect his and the debtor's interest. *Leasing Serv. Corp. v. Broetje,* 545 F. Supp. 362, 368 (S.D.N.Y. 1982); *Liberty Nat'l Bank & Trust Co. v. Acme Tool Div. of Rucker Co.,* 540 F.2d 1375, 1382 (10th Cir. 1976). Courts have often formulated the duty of a creditor who sells collateral after default in terms of a fiduciary obligation. One of the inherent duties is to ""use every effort to sell the estate under every possible advantage of time, place, and publicity . . ." *Foster v. Knutson,* 84 Wn.2d 538, 548, 527 P.2d 1108 (1974) (quoting *Perry on Trusts & Trustees* § 602o (4th ed. 1911)). Indeed, a creditor is "required to use his best efforts to sell the collateral for the highest price and to have a reasonable regard for the debtor's interests." *Foster,* at 549.

The trial court concluded the sale was conducted in a reasonable manner after considering four factors:

[T]he relationship of the price obtained to the recognized market price; the conformity of the sale to commercially accepted standards; the presence or absence of a recognized market, and the utilization of it in a sale; and the overall reasonableness of the means and method of disposition under the circumstances.

Given these four factors and that (1) the equipment, valued at $8,000 at repossession, was eventually sold for $12,600; (2) the depressed nature of the farm equipment market hampered immediate sale; and (3) Mr. Swanson marketed the equipment in a previously successful manner, we find that although we may have ruled differently, substantial evidence supports the court's finding that Mr. Swanson conducted the sale in a commercially reasonable manner.

■ Next, Mr. May contends the court erred by finding Mr. Swanson had provided satisfactory notice of the sale of

the collateral because the notice failed to indicate the time, place and manner of sale. A secured party selling the repossessed collateral must provide reasonable notice of the sale to the defaulting debtor. RCW 62A.9–504. In a public sale, notice must state "the time and place" at which the sale will occur. In private sales, however, the notice need only state "the time after which" the collateral is to be sold. RCW 62A.9–504(3). An important factor in determining whether notice was "reasonable" is the length of time by which it precedes the date of resale. Official Comment 5 to RCW 62A.9–504 states:

> at a minimum [the notice] must be sent in such time that persons entitled to receive it will have sufficient time to take appropriate steps to protect their interests by taking part in the sale or other disposition if they so desire.

The secured creditor can satisfy the notice requirement merely by sending notification; it is not necessary that the debtor receive it. *See* J. White & R. Summers, *Uniform Commercial Code* 1112 (1980). Failure to give reasonable notification of a proposed disposition does not automatically bar the secured party from recovering a deficiency judgment. *Grant Cy. Tractor Co. v. Nuss,* 6 Wn. App. 866, 869–70, 496 P.2d 966 (1972); *Commercial Credit Corp. v. Wollgast,* 11 Wn. App. 117, 121–22, 521 P.2d 1191 (1974).

Here, the court found Mr. Swanson notified Mr. May reasonably. Eight days after repossessing the equipment, Mr. Swanson sent Mr. May a certified letter with return receipt requested which advised Mr. May that Mr. Swanson intended to sell the equipment to the highest bidder and collect the balance due on the contract from Mr. May. The letter also requested Mr. May to contact Mr. Swanson with hopes of arranging some type of settlement. Four notices of the certified letter were left for Mr. May, but the letter was returned unclaimed September 16, 1981. We find substantial evidence supports the court's finding that this notice was reasonable. Even if the notice were unreasonable, Mr. Swanson still may claim a deficiency subject only to damages Mr. May may have sustained for lack of notice. *Nuss,*

at 869–70; *Wollgast,* at 122. Since Mr. May presented no evidence of damage before the court, this theory cannot be considered. We find no error.

We next consider whether the 36 percent interest established in the purchase agreement was usurious. Our Legislature limited the defense of usury in RCW 19.52.090:

> No person may plead the defense of usury or maintain any action thereon or therefor for the interest charged on the unpaid balance of a contract for the sale and purchase of personal property which was not purchased primarily for personal, family or household use or real property if the purchase was made after May 1, 1980 and prior to March 1, 1981.

The court determined this statute precluded Mr. May's defense of usury because the parties entered into the agreement June 1, 1980, which is within the statutory period precluding this defense.

Mr. May concedes this section precludes the defense of usury in nonconsumer transactions but nevertheless claims the contract is void on the basis of common law usury (citing *Lee v. Hillman,* 74 Wash. 408, 133 P. 583 (1913) and *Flannery v. Bishop,* 81 Wn.2d 696, 504 P.2d 778 (1972)). But usury is a purely statutory creation, and in the absence of statutory restriction parties may ordinarily contract for any rate of interest. *Sparkman & McLean Co. v. Govan Inv. Trust,* 78 Wn.2d 584, 587, 478 P.2d 232 (1970); *Hafer v. Spaeth,* 22 Wn.2d 378, 382, 156 P.2d 408 (1945). Moreover, the Legislature also precluded persons from pleading "the defense of usury . . . if the transaction was primarily for *agricultural,* commercial, investment, or business purposes: *Provided, however,* That this section shall not apply to a consumer transaction of any amount." (Some italics ours.) RCW 19.52.080.[6]

Here, both RCW 19.52.080 and .090 preclude Mr. May's defense of usury. The transaction was for the sale of agri-

---

[6]As noted above, the court determined this was not a consumer transaction because Mr. May did not purchase the equipment for his personal, family or household use. RCW 62A.9-109(1).

cultural equipment, thus not within the statute's proviso; it was also conducted June 1, 1980, which, as stated before, is within the statutory period to which this section applies.

■ Finally, Mr. May alleges the court erred by awarding attorney fees because the court did not make a finding of fact upon which the award could be based. Findings of fact consist of the judge's decision on the controverted issues of fact in the case, and "must cover all the material issues of fact which have been controverted on the trial." 2 L. Orland, Wash. Prac., *Trial Practice* § 307 (1972 & Supp. 1983); *see also In re Kennedy*, 80 Wn.2d 222, 231, 492 P.2d 1364 (1972); *Williamson v. United Bhd. of Carpenters & Joiners*, 12 Wn.2d 171, 186, 120 P.2d 833 (1942). The court here found the parties entered into a purchase agreement which reads:

> In the event that any action is filed in relation to this Lease, the unsuccessful party in the action shall pay to the successful party, in addition to all other sums that either party may be called on to pay, a reasonable sum for the successful party's attorneys' fees.

Neither the content nor the context of this contractual provision was controverted. Hence, the court's findings of fact adequately support the conclusion of law awarding terms. The court properly awarded Mr. Swanson terms.

On appeal, Mr. Swanson seeks attorney fees with only a cursory comment at the conclusion of his brief; he also failed to file an affidavit in a timely fashion pursuant to RAP 18.1. This frustrates the purpose served by RAP 18.1(c) as articulated in *Lindsay Credit Corp. v. Skarperud*, 33 Wn. App. 766, 773, 657 P.2d 804 (1983). Under RAP 1.2(b), a sanction of $500, to be paid to the clerk of this court, is imposed against Mr. Swanson's attorney for his failure to file the affidavit. We also note this same untimely affidavit details fees and hours not attributable to the appeal itself, but rather incurred in an attempt to collect on the judgment. The attorney fees requested have been reduced accordingly. We award Mr. Swanson $2,200 in

attorney fees and costs.

GREEN, C.J., and MUNSON, J., concur.