**ALAMOSA NATIONAL BANK,**
**Plaintiff-Appellant,**

v.

**SAN LUIS VALLEY GRAIN GROWERS, INC., a Colorado corporation; Louie E. Entz; Richard D. Lowry; E.C. Cates, L.D. Stoeber; Everett W. Myers; and Ronald E. David, Defendants-Appellees.**

No. 85CA0224.

Colorado Court of Appeals,
Div. III.

March 17, 1988.

Rothgerber, Appel, Powers & Johnson, Gregory L. Williams, Denver, for plaintiff-appellant.

Elizabeth A. Conour, Richard E. Conour, Del Norte, for defendants-appellees.

TURSI, Judge.

The plaintiff, Alamosa National Bank (Bank) appeals the judgment of the trial court in favor of defendants, San Luis Valley Grain Growers, Inc. (Growers), Louie E. Entz, Richard G. Lowry, L.D. Stoeber, Everett W. Myers, and Ronald E. David, on plaintiff's claim for a deficiency judgment on Growers' promissory notes. Its principal contentions are that the trial court erred: (1) by determining that the railroad track scale was personal property and (2) by holding that the Bank retained the Growers' personal property in satisfaction of the debts. We disagree with the Bank's first contention, but agree with its second contention; therefore, we reverse in part and affirm in part.

Growers obtained a series of loans from the Bank to finance a grain-handling facility. The first note was for $88,000 and was secured by the deed of trust on the Monte Vista Flour Mill and a security agreement covering furniture, fixtures, inventory, and accounts receivable. The second note was for $475,000 and was secured by a deed of trust on approximately 10 acres of property, a second deed of trust on the Monte Vista Flour Mill, and a security agreement covering machinery and equipment to be purchased with the proceeds of the loan. The third note was for $65,000 and was secured by a security agreement covering furniture, fixtures, inventory, and accounts receivable.

The individual defendants are shareholders in Growers. In October of 1980, each executed an individual guarantee in accordance with their fractional interests in the company a proportional interest of the Growers' indebtedness.

Growers used the loan proceeds to purchase and erect a grain-handling facility on the 10–acre property and installed a railroad track scale on the railroad right-of-

way just north of and adjacent to the 10–acre tract.

Growers defaulted on the notes and the Bank foreclosed its deeds of trust on the two tracts of real property. It bid a total of $545,000 at the foreclosure sales. The Monte Vista Flour Mill was redeemed by the San Luis Valley Development Group for $63,373.69. The Bank received a public trustee's deed for the 10–acre tract on August 10, 1983, and took possession of the real property, the machinery and equipment, and the railroad track scale.

The Bank did not foreclose its security agreements on any of the personal property.

In June of 1983, the Bank filed this action against Growers on the three promissory notes and against the individual defendants on the guaranty agreements seeking a deficiency judgment plus interest and attorney fees.

The defendants answered, in part, that since the Bank took possession of personal property described in the security agreements and failed to proceed against such collateral within a reasonable time as permitted by § 4–9–501(4), C.R.S., and as required by § 4–9–504, C.R.S. (1987 Cum. Supp.), that the Bank had elected to accept the collateral as a discharge of the entire obligation pursuant to § 4–9–505(2), C.R.S. (1987 Cum.Supp.).

The case was tried to the court. At trial the Bank conceded it had possession of certain personal property, including an auger and attachment which were valued at $2,459. Other personal property (mostly furniture) was not valued at trial. The Bank maintained, however, that the grain-handling facility and the railroad track scale were fixtures, and therefore, they were part of the 10–acre tract of real property for which it had received title pursuant to the public trustee's deed.

The trial court concluded the Bank was a secured party and the Growers were in default under the terms of the notes and security agreements; therefore, the Bank had the rights and remedies of a secured party under the Uniform Commercial Code (U.C.C.). It determined that the Bank had

"conceded and the evidence establishes" that the railroad track scale plus the auger and attachment were personal property with a value in excess of $92,759. It further determined the Bank had seized, possessed, and used such personal property for over a year without any attempt to comply with the U.C.C. Consequently, the trial court concluded, the Bank's action or inaction with respect to the personal property collateral was unreasonable; thus, it ruled the claimed deficiency had been satisfied, and the Bank was to retain the personal property in full satisfaction of the debt.

The trial court did not determine whether the grain-handling facility became a fixture or remained personal property, but instead grounded its decision entirely on the Bank's retention of the railroad track scale and other personal property.

## I

The Bank asserts the trial court erred by concluding that the railroad track scale was personal property since it did not make that concession at trial. We disagree.

The trial court determined that the Bank had "conceded *and the evidence establishes*" (emphasis added) that the railroad track scale was personal property and the record contains supporting evidence as referred to by the court. Therefore, a concession by the Bank regarding the scale was not necessary to the trial court's decision, and error, if any, relative thereto is without significance.

The question whether an article of personal property attached to realty is a fixture or remains personal property is a question of fact. *Samett v. Whelan,* 147 Colo. 41, 362 P.2d 559 (1961); *Ferganchick v. Johnson,* 28 Colo.App. 448, 473 P.2d 990 (1970). Factual findings of the trial court may not be disturbed on appeal unless they are unsupported by evidence in the record. *Johnson v. Smith,* 675 P.2d 307 (Colo. 1984). One of the elements of the test to determine whether the object is a fixture is whether it is annexed to the real property. *Ferganchick v. Johnson, supra.*

■ Here, the evidence showed the scale was not located on the 10-acre tract of property foreclosed in the Bank's deed of trust. Instead, it was located on the railroad right-of-way north of the property. Since evidence shows the railroad track scale is not physically annexed to the foreclosed real property, it supports the trial court's determination that the scale remained personal property, and we will not disturb that ruling on review.

## II

The Bank maintains the trial court erred by determining from the Bank's continued possession of the collateral that it had impliedly elected to retain the Growers' personal property in satisfaction of the debts pursuant to § 4-9-505(2). Although we disagree with the manner in which the Bank characterizes the trial court's findings of fact and conclusions of law, we do agree that error was committed, and the matter must be remanded for further proceedings.

■ A creditor's remedies pursuant to the U.C.C. are cumulative, it may proceed to reduce its claim to judgment, foreclose on the collateral, dispose of the collateral in a commercially reasonable manner, or retain the goods in satisfaction of the debt. Sections 4-9-501(1) and 4-9-503, C.R.S.; §§ 4-9-504 and 4-9-505(2), C.R.S. (1987 Cum.Supp.). A secured creditor need not elect a remedy, rather it may pursue methods of collection afforded by the U.C.C. or through judicial processes otherwise available. *Bilar, Inc. v. Sherman*, 40 Colo.App. 38, 572 P.2d 489 (1977).

■ A secured party is not required first to exhaust the collateral. *Native Alaskan Reclamation & Pest Control, Inc. v. United Bank Alaska*, 685 P.2d 1211 (Alaska 1984). A secured party in possession may proceed in a judicial action on the note and is not required to reduce itself to the position of an unsecured creditor so long as it acts in a commercially reasonable manner regarding the collateral and does not impair the position of the debtor. *McCullough v. Mobiland, Inc.*, 139 Ga. App. 260, 228 S.E.2d 146 (1976). Whether

a secured party has acted reasonably in holding collateral is a question of fact within the province of the trial court and will not be disturbed on review unless so clearly erroneous as to find no support in the record. *ITT Terryphone Corp. v. Modems Plus, Inc.*, 171 Ga.App. 710, 320 S.E.2d 784 (1984); *see People in Interest of M.S.H.*, 656 P.2d 1294 (Colo. 1983).

■ Here, the trial court determined the Bank retained the Growers' personal property for an excessive period of time and used the property as its own during that period; therefore, it concluded the Bank's retention was commercially unreasonable.

The Bank concedes that in August of 1983, it took possession of the personal property (including the railroad track scale) and the grain-handling facility under the belief that it owned them. At the time of the trial court's judgment, the Bank had held the collateral for seventeen months. Therefore, there is support for the trial court's determination that the Bank acted unreasonably in holding the Growers' personal property, and we will not disturb it on review.

Accordingly, the issue presented for our determination is whether it may be concluded that a secured party has elected to retain collateral in discharge of a debt pursuant to § 4-9-505(2) because it has retained or used the collateral in a commercially unreasonable manner. This is a question of first impression in Colorado.

Section 4-9-505(2) provides:

"In any other case involving consumer goods or any other collateral, a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modifying his rights under this subsection (2)."

■ Two lines of cases have developed from other jurisdictions which have considered the question. One line of cases holds that even in the absence of a written proposal to retain, the secured party may be deemed to have elected to retain the

collateral in satisfaction of the obligation if he conducts himself in a manner so unfair or so unreasonable as to amount to such retention. *See Moran v. Holman,* 514 P.2d 817 (Alaska 1973); *Wisconics Engineering, Inc. v. Fisher,* 466 N.E.2d 745 (Ind. App.1984); *Schmode's, Inc. v. Wilkinson,* 219 Neb. 209, 361 N.W.2d 557 (1985); *Service Chevrolet, Inc. v. Sparks,* 99 Wash.2d 199, 660 P.2d 760 (1983); and *Swanson v. May,* 40 Wash.App. 148, 697 P.2d 1013 (1985). The underlying rationale of this approach is that the creditor should not be permitted to retain the collateral for an excessive period, use it extensively, or allow it to depreciate in value and then profit by asserting a right to a deficiency based on its own failure to furnish the requisite notice. *Moran v. Holman, supra; Service Chevrolet, Inc. v. Sparks, supra.* Nor should the creditor be allowed to deprive the debtor of the use and benefit of the collateral. *Swanson v. May, supra.*

The second line of cases holds that an election to take the collateral in full satisfaction of the debt will not be implied, since it must be made by written notice to the debtor as specifically provided in § 4–9–505(2). *See Chrysler Credit Corp. v. Mitchell,* 94 A.D.2d 971, 464 N.Y.S.2d 96 (1983); *Roylex, Inc. v. E.F. Johnson Co.,* 617 S.W.2d 760 (Tex.Civ.App.1981).

Both §§ 4–9–504(1) and 4–9–505(2) provide that a secured party *may* dispose of or *may* propose to retain the collateral in satisfaction of the obligation, but do not provide that a secured party who does neither shall be deemed to have elected to retain. *Roylex, Inc. v. E.F. Johnson Co., supra.* Adherence to the letter of the U.C.C. results in the conclusion that there is no retention of collateral in satisfaction of the obligation under § 4–9–505 when the secured party does not give written notice of his intention to so retain. 9 R. Anderson, *Uniform Commercial Code* § 9–505:19 (3rd ed. 1985).

We adopt the reasoning of the second line of authority since it is consistent with Colorado law in analogous cases in which the secured party failed to give notice of sale of repossessed collateral to the debt-ors. There is sound reason to apply the same rule in retention of collateral cases as in failure to give notice cases. *Roylex, Inc. v. E.F. Johnson Co., supra.*

■ Thus, we hold that a secured party in possession of the collateral who neither disposes of it, nor elects in writing to retain it in satisfaction of the obligation and is determined to have retained the collateral in a commercially unreasonable manner, must overcome the presumption that the value of the collateral equals the amount of the debt and unless rebutted, the obligation of the debtor has been satisfied. *Barney v. Morris,* 168 Ga.App. 426, 309 S.E.2d 420 (1983); *Roylex, Inc. v. E.F. Johnson Co., supra; see 1st Charter Lease Co. v. McAl, Inc.,* 679 P.2d 114 (Colo.App.1984); *Community Management Ass'n of Colorado Springs, Inc. v. Tousley,* 32 Colo.App. 33, 505 P.2d 1314 (1973). If it is determined the secured party acted in a commercially unreasonable manner regarding the collateral, the debtor has the right to recover from the secured party any resulting loss proved by the debtor. Section 4–9–507(1), C.R.S.; *ITT Terryphone Corp. v. Modems Plus, Inc., supra; Barney v. Morris, supra; Community Management Ass'n of Colorado Springs, Inc. v. Tousley, supra.*

Therefore, the trial court committed reversible error by holding the Bank had retained the Growers' personal property in discharge of the entire debt in the absence of a written proposal by the Bank to retain.

The defendants cite § 4–9–102(1)(a), C.R.S. (1987 Cum.Supp.) and argue the trial court need not determine if the grain-handling facility is a fixture or personal property because both are subject to the applicable provisions of the U.C.C. Under the circumstances here, we disagree.

Section 4–9–501(4), C.R.S., provides:

"If the security agreement covers both real and personal property, the secured party may proceed under part 5 of this article as to the personal property, *or he may proceed as to both the real and the personal property in accordance with his rights and remedies in respect of the real property in which case the pro-*

*visions of said sections do not apply."* (emphasis added)

 A real estate deed of trust attaches automatically to buildings and personal property which attaches to the land after execution of the deed of trust in such a way as to take on the character of real estate, *i.e.*, which become fixtures. F. Storke & D. Sears, *Colorado Security Law* § 22 (1955).

Therefore, the Bank's deed of trust attached automatically to the property which became fixtures. Furthermore, the Bank's deed of trust described its interest in the 10–acre tract to include the "appurtenances" to the real property. Accordingly, the Bank has properly foreclosed on all of the Growers' property which were fixtures pursuant to its rights and remedies regarding the real property. Any of the Growers' property which were fixtures have already been foreclosed and sold; consequently, the provisions of the U.C.C. are not applicable.

On remand the burden will be on the Bank to rebut the presumption that the Growers' personal property in its possession has a value equal to the outstanding debt. Consequently, the trial court will be required to determine whether the grain-handling facility is a fixture or personal property. Further, should the trial court determine there remains a deficiency, it must determine the proportionate liabilities of the individual directors based on their individual guarantees.

 The defendants also maintain the Bank has been paid in full because it holds only a 44 percent interest in the debt, and the undisputed value of the auger, auger attachment, and railroad track scale exceeds 44 percent of the deficiency.

However, the fact that the Bank may have contracted with a third-party to obtain part of the loan funds is irrelevant to this action. The contract between Growers and the Bank reflects the Growers promise to pay the Bank 100 percent of the principal and interest on the loan; therefore, the Growers are liable to the Bank for 100 percent of the deficiency.

We reject the Bank's remaining contention.

That portion of the judgment determining the railroad scale to be personal property is affirmed, the remainder of the judgment is reversed, and the cause is remanded with directions to the trial court to make further findings of fact and conclusions of law consistent with this opinion.

STERNBERG and BABCOCK, JJ., concur.